SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
EDWARD D. VOGEL, Cal. Bar No. 110081
ALEJANDRO E. MORENO, Cal. Bar No. 256802
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:   619.338.6500
Facsimile:   619.234.3815
E mail        evogel@sheppardmullin.com
              amoreno@sheppardmullin.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN LOTSOFF and ASHLEIGH HARTMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., FCTI, INC. and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:18-cv-2033-AJB-MDD<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION TO COMPEL ARBITRATION**<br><br>Date:       December 13, 2018<br>Time:       2:00 p.m.<br>Courtroom 4A (4th Floor Schwartz)<br><br>The Hon. Anthony J. Battaglia |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................ 1

II. THE ALLEGATIONS AND THE FACTS ....................................... 3

III. THE STANDARDS UNDER THE FEDERAL ARBITRATION ACT ......... 6

IV. THE COURT SHOULD COMPEL ARBITRATION ..................................... 7

    A. Plaintiffs Agreed To Arbitrate. ................................................ 7

    B. Plaintiffs' Claims Against Wells Fargo Are Subject To Arbitration. ................................................................................ 8

    C. The Arbitration Provision Is Enforceable. ............................... 9

        1. Plaintiffs Were Not Fraudulently Induced To Arbitrate. ........... 10

        2. Plaintiffs Did Not Agree To Arbitrate Under Duress................ 10

        3. Plaintiffs Cannot Show Unconscionability. ............................. 10

            a. *There Is No Procedural Unconscionability.* .................... 11

            b. *There Is No Substantive Unconscionability.* ................... 12

    D. The California Supreme Court's Decision In *McGill* Is Inapplicable. ......................................................................... 13

        1. Plaintiffs Do Not Seek Public Injunctive Relief....................... 13

        2. Even If The FAC States A Claim For Public Injunctive Relief (It Does Not), Then The Court Should Order All Arbitrable Claims To Arbitration And Stay The Request For Public Injunctive Relief. ................................................. 18

V. CONCLUSION ................................................................................ 19

SMRH:486859502.2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO'S MOTION TO COMPEL ARBITRATION

1

# TABLE OF AUTHORITIES

2
**Page**

3
<u>Cases</u>

4
*Am. Express Co. v. Italian Colors Rest.*
5
    570 U.S. 228 (2013) ................................................................ 6

6
*AT&T Mobility LLC v. Concepcion*
7
    563 U.S. 333 (2011) .................................................. 10, 12, 13, 15

8
*Ayala v. Ace Cash Express, Inc.*
    2018 U.S. Dist. LEXIS 43490 (S.D. Cal. Mar. 15, 2018)................................. 11

9

10
*Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*
    249 F. App'x 534 (9th Cir. 2007)................................................................ 8

11

12
*Broughton v. Cigna Healthplans of Cal.*
    21 Cal.4th 1066 (1999) ................................................................ 15, 18

13

14
*Chavarria v. Ralphs Grocery Co.*
    733 F.3d 916 (9th Cir. 2013) ................................................................ 11, 12

15

16
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
    207 F.3d 1126 (9th Cir. 2000) ................................................................ 7, 9

17

18
*Citizen Bank v. Alafabco, Inc.*
    539 U.S. 52 (2003) ................................................................ 6

19

20
*City Solutions, Inc. v. Clear Channel Commc'ns*
    365 F.3d 835 (9th Cir. 2004) ................................................................ 10

21
*Cox v. Ocean View Hotel, Corp.*
    533 F.3d 1114 (9th Cir. 2008) ................................................................ 7, 8

22

23
*Croucier v. Credit One Bank, N.A.*
    2018 U.S. Dist. LEXIS 97756 (S.D. Cal. June 11, 2018) ................................. 17

24

25
*Cruz v. PacifiCare Health Sys., Inc.*
    30 Cal.4th 303 (2003)................................................................ 15, 19

26
*Irving v. EBIX, Inc.*
27
    2010 U.S. Dist. LEXIS 80443 (S.D. Cal. Aug. 10, 2010)................................. 7

28

-ii-

*Kilgore v. Keybank, N.A.*
    718 F.3d 1052 (9th Cir. 2013) ........................................................*passim*

*KPMG LLP v. Cocchi*
    565 US 18 (2011) ................................................................. 3

*Legnaioli v. Chrysler Capital, LLC*
    2015 U.S. Dist. LEXIS 182773 (C.D. Cal. Jun. 9, 2015) ................................... 12

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*
    363 F.3d 1010 (9th Cir. 2004) ............................................................7

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*
    858 F.2d 825 (2d Cir. 1988) ............................................................ 8

*McGill v. Citibank, N.A.*
    2 Cal.5th 945 (2017) ...........................................................*passim*

*Mortensen v. Bresnan Commc'ns, LLC*
    722 F.3d 1151 (9th Cir. 2013) ..................................................... 6, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ....................................................................9

*Pinnacle Museum Tower Assoc. v. Pinnacle Market Dev. (US), LLC*
    55 Cal. 4th 223 (2012) ...........................................................11, 12

*Rappley v. Portfolio Recovery Assoc.*
    2017 U.S. Dist. LEXIS 144182 (C.D. Cal. Aug. 24, 2017) ................................. 16

*Sanchez v. Valencia Holding Co., LLC*
    61 Cal. 4th 899 (2015) ............................................................. 12

*Sheehan v. Atlanta Int'l Ins. Co.*
    812 F.2d 465 (9th Cir. 1987) ....................................................... 10

*Simula, Inc. v. Autoliv, Inc.*
    175 F.3d 716 (9th Cir. 1999) .........................................................9

*United Steelworkers of Am. v. Warrior & Gulf Navigation*
    363 U.S. 574 (1960) .................................................................7

*Wosley, Ltd. v. Foodmaker, Inc.*
    144 F.3d 1205 (9th Cir. 1998) ........................................................ 8

-iii-

<u>Statutes</u>

9 U.S.C.
   § 1, *et seq.* ......................................................................................... 6
   § 2 ............................................................................................... 6, 7

28 U.S.C § 1348 ......................................................................................... 6

Californai Business & Professions Code § 17200 ..............................................*passim*

Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank") submits this memorandum of points and authorities in support of its Motion to Compel Arbitration of the claims asserted in the First Amended Complaint ("FAC") of Plaintiffs Helen Lotsoff ("Lotsoff") and Ashleigh Hartman ("Hartman," along with Lotsoff, "Plaintiffs").

## I.   INTRODUCTION

The Court should compel Plaintiffs to abide by their agreements to arbitrate disputes like this one with Wells Fargo.  The Court should grant this motion because: (i) when Plaintiffs applied for checking accounts with Wells Fargo, they agreed to be bound by the terms of the Consumer Account Agreement ("Account Agreement"), which requires the arbitration of any "dispute" between Plaintiffs and Wells Fargo, including all claims at issue here; (ii) Wells Fargo has a right to enforce the arbitration provision; and (iii) the arbitration provision is otherwise enforceable (*i.e.*, there is no fraud-in-the-inducement, duress, or unconscionability).  For these reasons, the Court should grant this motion, compel arbitration, and stay this action pending the outcome of that arbitration.

First, Plaintiffs agreed to arbitration.  Indeed, in their FAC Plaintiffs admit that they agreed to the Account Agreement, which contains the arbitration provision at issue.  Plaintiffs also sue for alleged breach of this Agreement.  They cannot affirm the Account Agreement on the one hand in support of their contract claims but repudiate its arbitration provision.  Consent to arbitrate cannot be disputed here.

Second, the arbitration provision applies to the claims here.  The Account Agreement broadly provides that the parties agree to arbitrate any "dispute," expansively defined as "any unresolved disagreement between Wells Fargo and [Plaintiffs]".  (*See* FAC, Ex. B at 3.)  Plaintiffs sue for breach of the Account Agreement and related claims based on their (mistaken) allegation that Wells Fargo improperly assessed or disclosed Non-Sufficient Fund ("NSF") Fees,

-1-

Overdraft Fees, or Out of Network ("OON") balance inquiry fees under the Account Agreement.  The arbitration provision here plainly applies to Plaintiffs' claims. Though there is no doubt that the arbitration provision applies to the dispute here, in light of the strong public policy favoring arbitration any doubt must be resolved in favor of arbitration.

Third, the arbitration provision is enforceable.  Plaintiffs did not enter into to the Account Agreement due to fraud or duress.  Nor can Plaintiffs prove unconscionability.  There was no oppression or surprise here.  Plaintiffs each opened a Wells Fargo checking account and acknowledged that, by using their Wells Fargo checking accounts, they consented to all the terms found in the Account Agreement, which includes the broad arbitration provision at issue in this case.

Wells Fargo anticipates that Plaintiffs may seek to avoid their agreement to arbitrate by attempting to invoke the recent California Supreme Court decision in *McGill v. Citibank, N.A.,* 2 Cal.5th 945 (2017), which holds that a contractual provision that prohibits a plaintiff from obtaining *public injunctive relief in any forum* is illegal and void as against public policy.  *McGill*, however, is inapplicable.  Here, Plaintiffs do not seek injunctive relief on behalf of the general public.  Rather, they seek only private injunctive relief in favor of a narrow subset of Wells Fargo checking account holders.  Simply put, the allegations of wrongdoing in the FAC concerning the internal operations of Plaintiffs' checking accounts are distinct from the allegations of false advertising that the California Supreme Court has found underlie requests for public injunctive relief.

Even if the Court concludes that the FAC states a claim for public injunctive relief (and it should not), *McGill* is also inapplicable because the terms of the arbitration clause in the Account Agreement only prohibit Plaintiffs from obtaining public injunctive relief *in arbitration*.  Again, assuming Plaintiffs are entitled to public injunctive relief, the Account Agreement allows them to obtain such relief from this Court.  Under these circumstances, the Court should apply the

-2-

1  so-called *Broughton-Cruz* rule and order all arbitrable claims to arbitration, retain

2  jurisdiction over the claims for public injunctive relief, and stay its proceedings

3  pending the arbitration of the arbitrable claims.

4          For these reasons, Wells Fargo requests that the Court compel

5  arbitration and either (i) order all claims against Wells Fargo to arbitration, or (ii)

6  order all arbitrable claims to arbitration and stay this action as to any non-arbitrable

7  claims pending the conclusion of the arbitration.[1]

8          ## II.   THE ALLEGATIONS AND THE FACTS

9          Plaintiffs are both Wells Fargo checking account holders.  (FAC ¶¶ 7-

10 8.)  Their relationship with Wells Fargo is governed by the terms of the Account

11 Agreement.  (*See id.*, Ex. B, at 2 ("The Agreement… [e]xplains the terms of your

12 banking relationship with Wells Fargo [and] is the entire Agreement between Wells

13 Fargo and you for your account and any services.").)[2]  The Account Agreement

14 contains a broadly worded arbitration provision, which provides as follows:

15              If you have a dispute, we hope to resolve it as quickly
                and as easily as possible.  First, discuss your dispute with
16              a banker.  If your banker is unable to resolve your
                dispute, you agree that either Wells Fargo or you can
17              initiate arbitration as described in this section.

18  _____

19 [1] Plaintiffs allege a cause of action for conversion against FCTI, Inc. ("FCTI"), an
20 independent ATM operator.  (*See* FAC ¶¶ 11, 336-348.)  Wells Fargo does not
   know whether Plaintiffs' claim against FCTI is arbitrable.  Nevertheless, even if
21 such claim is not arbitrable, the Court cannot deny arbitration here due to the
   existence of claims against defendants who are not parties to the arbitration
22 agreement between Wells Fargo and Plaintiffs.  *See KPMG LLP v. Cocchi*, 565 US
   18, 22 (2011) (under the FAA, courts must compel arbitration of pendent
23 arbitrable claims even though nonarbitrable claims remain to be tried in court and
   result in "possibly inefficient maintenance of separate proceedings in different
24 forums") (internal quotes omitted).

   [2] Plaintiffs attach the Account Agreement, effective April 24, 2017, to their FAC.
25 (*See, e.g.*, FAC, Ex. B.)  Each version of the Account Agreement supersedes the
   previously operative versions and becomes effective automatically if the customer
26 continues to use his or her account after receiving notice that the Account
   Agreement has been amended.  (*See* FAC, Ex. B at 2 ("The Agreement…
27 [r]eplaces all prior agreements including any oral or written representations.").)
   Because the version of the Account Agreement attached to the FAC is the version
28 that was operative when Plaintiffs initiated this action, it governs the instant
   dispute.

Definition:  Arbitration means an impartial third party will hear the dispute between Wells Fargo and you and provide a decision… *A "dispute" is any unresolved disagreement between Wells Fargo and you.*  A "dispute" may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement.

****

[N]either Wells Fargo nor you will be entitled to join or consolidate disputes by or against others as a representative or member of a class, to act in any arbitration in the interests of the general public, or to act as a private attorney general.

(*See* FAC, Ex. B at 3 (emphasis added).)  The Account Agreement provides that the Consumer Arbitration Rules of the American Arbitration Association ("AAA") apply.  (*Id.*)  It states that the Arbitrator (and not the Court) should resolve issues of whether a "dispute" is arbitrable.  (*Id.*)  Finally, it provides that both Wells Fargo and Plaintiffs can "exercise any lawful rights or use other available remedies to… [o]btain provisional or ancillary remedies such as injunctive relief… [from] a court of competent jurisdiction."  (*Id.*, Ex. B at 4.)[3]

Plaintiffs' claims arise from Wells Fargo's operation and servicing of Plaintiffs' consumer checking accounts.  (*See* FAC ¶¶ 68, 77, 244.)  Lotsoff alleges that Wells Fargo improperly serviced her checking account by charging both an NSF Fee and an Overdraft Fee in connection with what Lotsoff claims was a single "transaction."  (*Id.* ¶ 77.)  On October 24, 2016, the Bank rejected the transaction at issue because Lotsoff had Non-Sufficient Funds and was assessed an NSF Fee.  (*Id.*)  On October 31, 2016, the merchant again presented Lotsoff's charge to the Bank for settlement, which the Bank paid as an overdraft, resulting in an Overdraft Fee.  (*Id.*)

Hartman alleges that she initiated two debit card transactions on November 16, 2015 to pay for Uber rides, at which time her checking account

---

[3] Plaintiffs attach Wells Fargo's Online Access Agreement to the FAC as Exhibit A. The Online Access Agreement is inapplicable to this dispute because the fees at issue in this action did not arise from Plaintiffs' accessing of Wells Fargo's online portal, website, or online services.  (*See* FAC, Ex. A at 1.)

-4-

1    allegedly had sufficient available funds to cover those transactions.  (*Id.* ¶ 68.)

2    Hartman further contends that Uber submitted the transactions for settlement (*i.e.*

3    that those transactions were paid) two days later on November 18, 2015.  (*See id.* ¶

4    69.)  Hartman had insufficient available funds in her checking account to cover the

5    Uber transactions when they were presented for settlement on November 18, 2015.

6    (*Id.*)  Hartman claims that Wells Fargo improperly serviced her account by charging

7    her two Overdraft Fees in connection with her Uber purchases.  (*Id.* ¶ 70.)

8          Hartman also alleges that, on June 20, 2018, she used her Wells Fargo

9    debit card at an ATM owned by FCTI located at a 7-Eleven convenience store in

10    San Diego to withdraw cash.  (*Id.* ¶ 244.)  Hartman contends that she was assessed

11    two OON balance inquiry fees as a result of her FCTI ATM withdrawal, despite

12    consenting to only one balance inquiry transaction.  (*Id.*)  Hartman claims Wells

13    Fargo improperly serviced her account by charging two balance inquiry fees as a

14    result of the instructions it received from FCTI.  (*See id.* ¶¶ 223-243.)

15          Plaintiffs purport to be representatives of the following classes of Wells

16    Fargo account holders:  (i) "All holders of a WELLS FARGO checking account

17    and/or money market account in California who, within the applicable statute of

18    limitations preceding the filing of this lawsuit, incurred both an NSF Fee and an

19    Overdraft Fee, or more than one NSF Fee, on the same item (the "Multiple Fee

20    Class")"; (ii) "All holders of a WELLS FARGO checking account in California

21    who, within the applicable statute of limitations preceding the filing of this lawsuit,

22    were assessed two or more OON Fees when they performed a balance inquiry prior

23    to withdrawing cash at an out-of-network ATM (the "OON Class")"; (iii) "All

24    holders of a WELLS FARGO checking account in California who, within the

25    applicable statute of limitations preceding the filing of this lawsuit, were charged

26    [Overdraft] Fees on transactions that were authorized into a positive available

27    balance (the "APPSN Class")"; and (iv) "All holders of a checking account in

28    California who, within the applicable statute of limitation preceding the filing of this

-5-

1   lawsuit, were assessed one or more fees for purportedly undertaking a balance

2   inquiry as part of a cash withdrawal at a FCTI ATM (the "FCTI Class")." (*Id.* ¶

3   245.)

4   **III.   THE STANDARDS UNDER THE FEDERAL ARBITRATION ACT**

5          The Federal Arbitration Act ("FAA") codifies the strong federal policy

6   in favor of arbitration. 9 U.S.C. § 1, *et seq.* "As federal substantive law, the FAA

7   preempts contrary state law." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d

8   1151, 1157-58 (9th Cir. 2013).

9          The FAA applies to any written arbitration agreement contained in a

10  contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA is

11  read broadly to cover any transaction involving or affecting interstate commerce.

12  *See Citizen Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Wells Fargo is a

13  national association not organized under the laws of any state. National banks are

14  "deemed citizens of the States in which they are respectively located." 28 U.S.C

15  § 1348. This action concerns Overdraft Fees, NSF Fees, and OON balance inquiry

16  fees assessed on consumer checking accounts, which can be used throughout the

17  United States (and internationally). (*See* FAC ¶¶ 68, 77, 244.) Furthermore, the

18  parties expressly agreed that "[t]he Federal Arbitration Act (Title 9 of the United

19  States Code) governs this Arbitration Agreement and any arbitration between Wells

20  Fargo and [Plaintiffs]." (*Id.*, Ex. B, at 3.) Thus, the FAA applies.

21         The "overarching principle" of the FAA is that "arbitration is a matter

22  of contract." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

23  The FAA "mandates that district courts shall direct the parties to proceed to

24  arbitration on issues as to which an arbitration agreement has been signed."

25  *Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted).

26         Courts must compel arbitration under the FAA whenever: (i) there is an

27  agreement to arbitrate; (ii) the dispute falls within the scope of that agreement; and

28

1  (iii) the agreement is enforceable.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

2  207 F.3d 1126, 1130 (9th Cir. 2000).

3  **IV.   THE COURT SHOULD COMPEL ARBITRATION**

4          A district court's role under the FAA is limited to determining whether

5  a valid agreement to arbitrate exists and, if it does, whether the agreement

6  encompasses the dispute at issue.  *Cox v. Ocean View Hotel, Corp.*, 533 F.3d 1114,

7  1119 (9th Cir. 2008).  In construing the terms of an agreement, the court "appl[ies]

8  general state-law principles of contract interpretation, while giving due regard to the

9  federal policy in favor of arbitration by resolving ambiguities as to the scope of

10 arbitration in favor of arbitration." *Irving v. EBIX, Inc.*, 2010 U.S. Dist. LEXIS

11 80443, at *4 (S.D. Cal. Aug. 10, 2010) (citing *Wagner v. Stratton Oakmont, Inc.,* 83

12 F.3d 1046, 1049 (9th Cir.1996)).

13         If the district court determines that a valid arbitration agreement

14 encompasses the dispute, then the FAA requires the court to enforce the arbitration

15 agreement according to its terms.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.,*

16 363 F.3d 1010, 1012 (9th Cir. 2004).  A district court must compel arbitration

17 "unless it may be said with positive assurance that the arbitration clause is not

18 susceptible of an interpretation that covers the asserted dispute." *United*

19 *Steelworkers of Am. v. Warrior & Gulf Navigation,* 363 U.S. 574, 582-83 (1960).

20 **A.     Plaintiffs Agreed To Arbitrate.**

21         Here, the parties have contractually agreed to arbitrate their disputes.

22 (*See* FAC, Ex. B at 3); 9 U.S.C. § 2 ("an agreement in writing to submit to

23 arbitration an existing controversy arising out of such a contract, transaction, or

24 refusal, shall be valid, irrevocable, and enforceable.").

25         Plaintiffs admit that they "contracted [with Wells Fargo] for checking

26 account and debit card services, as embodied in the Consumer Account Agreement."

27 (FAC ¶ 257.)  Indeed, Plaintiffs attach the Account Agreement to their FAC and

28

-7-

thereby incorporate the terms of that agreement to their Complaint.  (*See* FAC, Ex. B at 3-4.)

The Account Agreement contains an extremely broad arbitration clause stating that any "dispute" is subject to arbitration and defining a "dispute" as "any unresolved disagreement between Wells Fargo and [Plaintiffs]."  (*Id.,* Ex. B at 3.) Courts have found such language is enough to compel arbitration.  In fact, the Ninth Circuit and other federal courts have held that the word "arbitrate" does not even have to be present for an arbitration agreement to be valid and binding.  *See Wosley, Ltd. v. Foodmaker, Inc*., 144 F.3d 1205, 1208 (9th Cir. 1998) ("'[n]o magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the [FAA].'") (quoting *AMF, Inc., v. Brunswick Corp.*, 621 F. Supp. 456, 460 (E.D.N.Y. 1985); *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co*., 858 F.2d 825, 830-31 (2d Cir. 1988)).  Rather, the agreement must simply demonstrate the parties' intention to submit disputes to a third party for binding resolution. *McDonnell Douglas*, 858 F.2d at 830-831.  Therefore, "'[i]f the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.'"  *Wolsey,* 144 F.3d at 1208 (quoting *AMF, Inc.*, 621 F. Supp. at  460). No other terms are required.  Accordingly, the arbitration provision in the Account Agreement is more than sufficient to bind the parties.

**B.      Plaintiffs' Claims Against Wells Fargo Are Subject To Arbitration**.

The Court's second task under the FAA requires it to determine "whether the agreement encompasses the dispute at issue."  *Cox,* 533 F.3d 1119 (citing *Chiron*, 207 F.3d at 1130).  Here, the arbitration clause in the Account Agreement extends to Plaintiffs' claims against Wells Fargo.

Generally, courts will compel arbitration where the arbitration provision is broadly-worded and covers all the issues at hand.  *See Boston Telecomms. Group, Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 538 (9th Cir. 2007) (finding an arbitration provision was sufficiently broad in scope because

-8-

1   it stated that "[a]ny disputes arising out of the interpretation of [the] agreement"

2   would be settled by arbitration); *Chiron*, 207 F.3d at 1131 (clause requiring

3   arbitration of any dispute "relating to" agreement is "broad and far reaching");

4   *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720, 726 (9th Cir. 1999) (finding

5   arbitration clause was broadly worded because it provided for arbitration of all

6   disputes "arising in connection with" the parties' agreement).  In fact, as a matter of

7   federal law, "any doubts concerning the scope of arbitrable issues should be

8   resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

9   *Corp.*, 460 U.S. 1, 24-25 (1983).

10          The arbitration clause in the Account Agreement is even broader than

11   the arbitration clauses discussed above.  It extends to *any* "dispute" between the

12   parties, not just disputes concerning the Account Agreement.  As a result, the

13   arbitration clause in the Account Agreement plainly covers Plaintiffs' claims against

14   Wells Fargo concerning the Overdraft Fees, NSF Fees, and OON balance inquiry

15   fees purportedly assessed to Plaintiffs' Wells Fargo consumer checking accounts.

16   (*See* FAC ¶¶ 68, 77, 244.)  Moreover, Plaintiffs' entire lawsuit is about whether

17   Wells Fargo somehow breached the Account Agreement by assessing Plaintiffs fees

18   when the Bank was purportedly not entitled to assess such fees and whether such

19   fees were not sufficiently disclosed in the written materials describing how

20   Plaintiffs' Wells Fargo checking accounts would be operated.  (*See* FAC, ¶¶ 258-

21   259, 272, 286 (accusing Wells Fargo of breaching the Account Agreement), 295,

22   301-303, 309-311, 328-330, 340 (accusing Wells Fargo of misrepresenting the terms

23   of the Account Agreement and wrongfully depriving Plaintiffs of funds).).  Wells

24   Fargo disagrees with Plaintiffs' claims that the Bank (i) "breached" any agreement,

25   (ii) misrepresented how its consumer checking accounts operate, and/or (iii) is

26   wrongfully withholding any funds belonging to Plaintiffs.  Thus, Plaintiffs' claims

27   come within the scope of the arbitration clause in the Account Agreement.

28   **C.      The Arbitration Provision Is Enforceable.**

-9-

1    Arbitration clauses may be invalidated by "generally applicable

2 contract defenses, such as fraud, duress, or unconscionability, but not by defenses

3 that apply only to arbitration or that derive their meaning from the fact that an

4 agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S.

5 333, 339 (2011). "Any general state-law contract defense, based on

6 unconscionability or otherwise, that has a disproportionate effect on arbitration is

7 displaced by the FAA." *Mortensen*, 722 F.3d at 1159. States cannot require a

8 procedure that is inconsistent with the FAA, even if it is desirable for unrelated

9 reasons. *See Concepcion,* 563 U.S. at 351. The arbitration provision here is

10 enforceable. Plaintiffs have not pled, and cannot meet their heavy burden to show,

11 otherwise.

12    1.    Plaintiffs Were Not Fraudulently Induced To Arbitrate.

13    Fraudulent inducement requires proof of five elements: (i) a

14 misrepresentation (false representation or fraudulent concealment); (ii) scienter;

15 (iii) intent to defraud or induce reliance; (iv) justifiable reliance; and (v) resulting

16 damages. *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th

17 Cir. 2004). Plaintiffs do not allege (and cannot prove) any of these elements, much

18 less all of them. In particular, there were no misrepresentations or fraudulent

19 concealment here. Plaintiffs' obligation to arbitrate their disputes with Wells Fargo

20 is stated clearly in the first few pages of the Account Agreement immediately after

21 the "Introduction."

22    2.    Plaintiffs Did Not Agree To Arbitrate Under Duress.

23    As for duress, Plaintiffs must prove that they were forced into the

24 Account Agreement by coercive threats or acts, which they cannot do. *Sheehan v.*

25 *Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987). Plaintiffs sought out and

26 applied for a Wells Fargo checking account. (*See* FAC ¶¶ 7-8.) Plaintiffs have not

27 alleged and cannot establish any duress here, because there was none.

28    3.    Plaintiffs Cannot Show Unconscionability.

-10-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO'S MOTION TO COMPEL ARBITRATION

1    To invalidate on this ground, Plaintiffs must prove both procedural and

2  substantive unconscionability.  *See Kilgore*, 718 F.3d at 1058; *Pinnacle Museum*

3  *Tower Assoc. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012)

4  ("The party resisting arbitration bears the burden of proving unconscionability.").

5  Plaintiffs have not alleged, and cannot show, either.

6         a.    *There Is No Procedural Unconscionability.*

7         "Procedural unconscionability concerns the manner in which the

8  contract was negotiated and the respective circumstances of the parties at that time,

9  focusing on the level of oppression and surprise involved in the agreement."

10 *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013); *Kilgore,* 718

11 F.3d at 1059.

12        There was no oppression or surprise here.  Again, Plaintiffs had the

13 opportunity to review the Account Agreement before they opened their accounts and

14 had the opportunity to review any revised Account Agreements before continuing to

15 use their Wells Fargo checking account.  Moreover, just because the Account

16 Agreement may be a contract of adhesion does not mean that it is procedurally

17 unconscionable.  *See Ayala v. Ace Cash Express, Inc.,* 2018 U.S. Dist. LEXIS

18 43490, at *6 (S.D. Cal. Mar. 15, 2018) (Battaglia, J.) ("because the contract is

19 nothing more than adhesive, procedural unconscionability is low at most.").

20        Nor was there any surprise.  The Account Agreement clearly states that,

21 by continuing to use their Wells Fargo checking accounts, Plaintiffs are agreeing

22 that any "dispute" between Wells Fargo and Plaintiffs is subject to arbitration.

23 (FAC, Ex. B, 1, 3.)  The arbitration provision is not buried in fine print.  *See*

24 *Kilgore,* 718 F.3d at 1059 (finding arbitration agreement was not procedurally

25 unconscionable because "arbitration clause [was not] buried in fine print in the

26 Note, but was instead in its own section, clearly labeled, in boldface.").  In fact, it is

27 prominently displayed in the first few pages of Plaintiffs' Account Agreement.

28

-11-

*b.     There Is No Substantive Unconscionability.*

Nevertheless, there is no substantive unconscionability here. "Substantive unconscionability pertains to the fairness of an agreement's actual terms …. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather the term must be so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246; *see also Chavarria*, 733 F.3d at 923 ("A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'"); *Legnaioli v. Chrysler Capital, LLC*, 2015 U.S. Dist. LEXIS 182773, *10 (C.D. Cal. Jun. 9, 2015) (applying the shocks the conscience standard in assessing substantive unconscionability); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 917, 921, 922 (2015) (finding several arbitration terms not so one-sided as to be substantively unconscionable).

Here, the only terms in the arbitration provision are the agreement to arbitrate, the agreement that the Consumer Arbitration Rules of the AAA apply to the arbitration, and the class action waiver. The "terms," while limited, are straightforward and fair. (FAC, Ex. B at 3-4). There is nothing in the Account Agreement that "shocks the conscience." The Consumer Arbitration Rules of the AAA even provide that, beyond the filing fee, "the business shall pay the arbitrator's compensation[,]" including all expenses and hearing fees. (*See* RJN Ex. A (AAA Consumer Arbitration Rules—Cost of Arbitration) at 33.)

As for the class action waiver, it is enforceable under the FAA. *AT&T Mobility LLC*, 533 U.S. at 352. In this landmark decision, the U.S. Supreme Court invalidated California's *Discover Bank* rule "classifying most collective-arbitration waivers in consumer contracts as unconscionable." In rejecting the *Discover Bank* rule, the Supreme Court held it "interferes with" the purpose of the FAA and "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343. As a result, the FAA preempts it. *Id.* The Court in *Concepcion* was not swayed by *Discover Bank*'s public policy rationale—that enforcing class action waivers in

-12-

1  cases involving small sums of money would preclude most such claims. *Id.* at 351-

2  352. As the majority explained, "States cannot require a procedure that is

3  inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.*

4  Moreover, courts cannot treat arbitration provisions any differently than they treat

5  other contract terms. *Id.*

6        Accordingly, the arbitration provision in the Account Agreement is

7  enforceable.

8  **D.    The California Supreme Court's Decision In *McGill* Is Inapplicable.**

9        Plaintiffs may seek to avoid their obligation to arbitrate by asserting

10  that *McGill* precludes arbitration. Such an assertion would be mistaken.

11        In *McGill*, the California Supreme Court held that a clause in an

12  arbitration agreement precluding the plaintiff from seeking public injunctive relief

13  under Business & Professions Code Section 17200 ("Section 17200") and/or the

14  Consumer Legal Remedies Act ("CRLA") is unenforceable and void as against

15  public policy. *See* 2 Cal.5th at 955. *McGill* is not applicable here for two reasons:

16  (i) Plaintiffs' FAC does not seek "public injunctive relief" and, (ii) even if it did, the

17  arbitration clause in the Account Agreement does not completely prohibit Plaintiffs

18  from obtaining public injunctive relief.

19        1.    <u>Plaintiffs Do Not Seek Public Injunctive Relief.</u>

20        Plaintiffs seek injunctive relief in connection with their claims for

21  violation of Section 17200 and for violation of the CLRA in connection with Wells

22  Fargo's assessment of certain Overdraft Fees, NSF Fees, and OON balance inquiry

23  fees to a subset of Wells Fargo account holders in California. (*See* FAC ¶¶ 245,

24  279-335, Prayer (i).) As explained below, Plaintiffs' request for injunctive relief

25  does not constitute public injunctive relief because it seeks to benefit a group of

26  individuals similarly situated to Plaintiffs and not members of the "general public."

27  *See McGill,* 2 Cal.5th at 955.

28

-13-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
WELLS FARGO'S MOTION TO COMPEL ARBITRATION

1    The California Supreme Court's analysis in *McGill* is instructive.  In

2  *McGill*, the plaintiff alleged, among other things, that the defendant's *marketing* of a

3  "credit protector plan" was deceptive because it did not allow plaintiff to defer

4  payment on her credit card as advertised when she became unemployed.  *See id.* at

5  952-953.  The California Supreme Court reversed the Court of Appeal decision

6  ordering arbitration as against public policy because the arbitration clause contained

7  a class action waiver that prevented plaintiff from seeking public injunctive relief in

8  any forum.  *See id.* at 951-954, 961 ("Having determined that public injunctive relief

9  remains a remedy available to private plaintiffs under the UCL… as well as under

10  the CLRA, we next conclude that the arbitration provision here at issue is invalid

11  and unenforceable under state law insofar as it purports to waive McGill's statutory

12  right to seek such relief.").

13    As relevant here, the California Supreme Court held that "public

14  injunctive relief… has the primary purpose and effect of prohibiting acts that

15  threaten future injury to the general public."  *Id.* at 955 (internal citations omitted).

16  Private injunctive relief, on the other hand, "has the primary purpose or effect of

17  redressing or preventing injury to an individual plaintiff—*or to a group of*

18  *individuals similarly situated to plaintiff*[.]"  *Id.* (emphasis added).  In *McGill,* the

19  California Supreme Court found that the plaintiff sought public injunctive relief

20  because she alleged defendant's "advertising and marketing" of the credit protector

21  plan was deceptive.  *Id.* at 956.  The allegations specifically claimed that the

22  deception was intended to "induce members of the public… to purchase the [credit

23  protector plan]."  *Id.* at 957.  The key fact in *McGill* was that the purported unfair

24  and deceptive conduct involved the defendant's marketing, directed at the general

25  public.

26    The holding in *McGill* is consistent with prior California Supreme

27  Court authorities discussing the nature of public injunctive relief.  For example, in

28  *Broughton v. Cigna Healthplans of Cal.,* 21 Cal.4th 1066, 1072, 1079-81 (1999), the

-14-

Court found that plaintiff sought public injunctive relief because she sought to "enjoin future deceptive practices [related to advertising] on behalf of the general public." Likewise, in *Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal.4th 303, 315 (2003), plaintiff sought public injunctive relief because "the request for injunctive relief is clearly for the benefit of health care consumers and the general public by seeking to enjoin PacifiCare's alleged *deceptive advertising practices*." (emphasis added). Thus, the common thread that binds *McGill, Broughton,* and *Cruz* is that they concerned requests to enjoin defendants' *marketing efforts* directed at the general public and intended to persuade members of the general public to purchase defendants' services.

In contrast to *McGill, Broughton,* and *Cruz,* the Ninth Circuit's decision in *Kilgore* is in line with the alleged facts here. In *Kilgore*, the plaintiffs were a putative class of student loan borrowers and sought an injunction under Section 17200 to prevent the lenders from reporting loan defaults to the credit agencies and from enforcing the notes against the former students. *See* 718 F.3d at 1056. Defendants moved to compel arbitration, but the lower court denied the motion finding the class action waiver unconscionable under California law (the lower court issued its ruling prior to the U.S. Supreme Court's decision in *Concepcion*). *Id.* at 1057-58. The Ninth Circuit reversed the lower court and ordered arbitration. As relevant here, the Ninth Circuit held that the entire action was arbitrable because the plaintiffs did not state a claim for public injunctive relief:

> The claim for injunctive relief here does not fall within the "narrow exception to the rule that the FAA requires state courts to honor arbitration agreements." [citation] The third amended complaint seeks an injunction prohibiting Defendants from reporting non-payment of a Note by putative class members to credit agencies, from enforcing a Note against any class member, and from disbursing the proceeds of any loans to a seller whose consumer credit contract did not include Holder Rule language. The requested prohibitions against reporting defaults on the Note and seeking enforcement of the Note plainly would benefit only the approximately 120 putative class members. The requested injunction against

-15-

disbursing loans to sellers who do not include Holder Rule language in their contracts, while ostensibly implicating third parties, also falls outside the *Broughton-Cruz* rule.  The third amended complaint expressly notes that KeyBank had completely withdrawn from the private school loan business and does not allege that the bank is engaging in other comparable transactions. The injunctive relief sought thus, for all practical purposes, relates only to past harms suffered by the members of the limited putative class.

*See id.* at 1060-61.  Thus, even though the plaintiffs sought an injunction under Section 17200, they did not state a claim for public injunctive relief because the injunction sought only to enjoin the defendants' processes related to defaulted loans, which only affected a small subset of the defendants' customers.

Here, Plaintiffs' claims do not concern marketing or advertising. Rather, they concern the operation of Wells Fargo's consumer checking accounts and the disclosures to existing Wells Fargo account holders concerning those policies.  Plaintiffs do not allege that Wells Fargo marketed its services to the general public based upon (i) the details of its processing of Automated Clearing House ("ACH") transactions (and the processes through which it assesses NSF and Overdraft Fees, where applicable, on such transactions), (ii) the process it employs to settle pending debit card transactions, or (iii) the way it assesses OON balance inquiry fees in connection with its customers' third-party ATM usage.  Nor can Plaintiffs plausibly plead that members of the general public choose to open a checking account at a particular financial institution based upon each potential customer's evaluation of the internal mechanics governing the operation of such customer's account.  *See Rappley v. Portfolio Recovery Assoc.,* 2017 U.S. Dist. LEXIS 144182, at *13-14 (C.D. Cal. Aug. 24, 2017) (addressing *McGill* and rejecting plaintiff's claim that the complaint sought public injunctive relief because the "relief Plaintiff seeks is not designed to prevent future harm to the public at large, but is rather intended to redress prior and future injury to a specific group of putative plaintiffs"); *Croucier v. Credit One Bank, N.A.,* 2018 U.S. Dist. LEXIS

-16-

97756, *11-12 (S.D. Cal. June 11, 2018) (same).  Even if Plaintiffs were entitled to injunctive relief (and they are not), such injunctive relief would necessarily only benefit Wells Fargo account holders.  And, even then, only that subset of Wells Fargo account holders who incurred fees under the particular set of circumstances alleged in the FAC.

Separately, like in *Kilgore,* Plaintiffs' request for an injunction to "correct" Wells Fargo's account disclosures is moot.  For example, with respect to the APPSN Class, the Account Agreement attached to the FAC expressly states that, "if … transactions are authorized when your account has enough money but are later presented for payment when your account does not have enough money, we will pay the transaction into *overdraft* and charge an *overdraft* fee." (*See* FAC, Ex. B at 20-21 (emphasis in original).)  Likewise, with respect to the Multiple Fee Class, the Account Agreement provides that Plaintiffs authorize ACH debit entries for "*presentment or representment* of items written and authorized or written or authorized by you[,]" which necessarily means that a declined transaction may be represented for payment and paid into overdraft.  (*See id.*, Ex. B at 46 (emphasis added).)  Finally, the FCTI and OON Classes involve conduct and disclosures of FCTI and other third-party ATM operators, not Wells Fargo.  Wells Fargo simply assesses OON balance inquiry fees in accordance with the instructions it receives from third-party ATM operators.  Plaintiffs do not allege that Wells Fargo failed to disclose the amount of the OON balance inquiry fee.  Thus, there is nothing to enjoin as to Wells Fargo.[4]

In sum, because the FAC does not seek public injunctive relief, *McGill* is inapplicable.

---

[4] Plaintiffs do not cite any statute or regulation that prevents Wells Fargo from charging the fees disputed in the FAC.  Thus, Plaintiffs' request for injunctive relief should be construed as limited to revising Wells Fargo's existing account disclosures.

-17-

2. <u>Even If The FAC States A Claim For Public Injunctive Relief (It Does Not), Then The Court Should Order All Arbitrable Claims To Arbitration And Stay The Request For Public Injunctive Relief.</u>

Under *McGill*, any agreement that prohibits a party from seeking public injunctive relief under the CLRA and/or Section 17200 is illegal and unenforceable. *See* 2 Cal.5th at 961. Here, *McGill* is inapplicable because the Account Agreement only prohibits the parties from "act[ing] in any *arbitration* in the interest of the general public." (*See* FAC, Ex. B at 3.) It does not prevent Plaintiffs from seeking public injunctive relief in a court action. Thus, unlike the arbitration provision in *McGill,* the arbitration clause in the Account Agreement necessarily leaves the door open to obtaining a public injunction in at least one other forum.[5] Indeed, this is consistent with the carve-out for injunctive relief in the Arbitration Agreement, which provides: "Wells Fargo or you each can exercise any lawful rights or use other available remedies to . . . obtain provisional or ancillary remedies such as injunctive relief . . . [from] a court of competent jurisdiction." (*See id.*, Ex. B at 4.)

Assuming Plaintiffs have valid claims for a public injunction (and, as explained above, they do not), the Court should sever the public injunction portion of Plaintiffs' claims for violation of the CLRA and for violation of Section 17200, but order all other claims against Wells Fargo into arbitration. This is the so-called *Broughton-Cruz* rule whereby claims for a public injunction under the CLRA and Section 17200 are non-arbitrable, but any damages or restitution under the CLRA and Section 17200 must be arbitrated. *See Broughton*, 21 Cal.4th at 1084 ("Our holding that a CLRA injunctive relief action is not subject to arbitration does not necessarily lead to the conclusion that a CLRA action for damages is likewise inarbitrable"); *Cruz*, 30 Cal.4th at 315-317 (holding that claims for a public

---

[5] The Account Agreement contains a "poison pill" provision invalidating the arbitration agreement if any provision of the class action waiver is deemed unenforceable. (FAC, Ex. B at 3.) Given the fact that the class action waiver in the Account Agreement does not prohibit public injunctive relief in *any forum*, the "poison pill" provision in inapplicable here.

-18-

1  injunction under Section 17200 are inarbitrable, but claims for restitution and

2  disgorgement are arbitrable).  Thus, along with all other causes of action alleged

3  against Wells Fargo, Plaintiffs' claim for damages under the CLRA and for

4  restitution under Section 17200 should be ordered into arbitration—and, as a result

5  of the class action waiver, may only be pursued in arbitration on an individual basis.

6         In sum, if the Court concludes the FAC states a claim for public

7  injunctive relief, the Court should order all other claims to arbitration, retain

8  jurisdiction over the claim for public injunctive relief, and stay the proceedings

9  pending the arbitration of the arbitrable claims.

10                    V.    **CONCLUSION**

11         The arbitration clause in Plaintiffs' Account Agreement is valid and

12  should be enforced.  All claims against, and request for relief from, Wells Fargo are

13  arbitrable.  Accordingly, the Court should grant this motion and compel arbitration,

14  and, as appropriate, stay this action as to any claim for public injunctive relief

15  pending arbitration.

16  Dated:  September 6, 2018

17                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

18

19                          By   _____
                                        *s/Alejandro E. Moreno*
20                                  ALEJANDRO E. MORENO

21                               Attorneys for Defendant
22                               WELLS FARGO BANK, N.A.
                                 Email: amoreno@sheppardmullin.com
23

24

25

26

27

28

-19-