BENJAMIN T. MORTON (SBN: 199158)
bmorton@grsm.com
SHELBY A. POTEET (SBN: 297621)
spoteet@grsm.com
GORDON REES SCULLY MANSUKHANI
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7755
Facsimile: (619) 696-7124

Attorneys for Defendant FCTI, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN LOTSOFF and ASHLEIGH HARTMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., FCTI, INC., and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 3:18-cv-02033-AJB-MDD<br><br><u>CLASS ACTION</u><br><br>**FCTI, INC.'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date: January 10, 2019<br>Hearing Time: 2:00 p.m.<br>Hon. Anthony J. Battaglia<br>Courtroom: 4A |

**TABLE OF CONTENTS**     Page No.

| | | |
|---|---|---|
| I. | INTRODUCTION | - 1 - |
| II. | PLAINTIFFS' ALLEGATIONS | - 1 - |
| III. | LEGAL STANDARD | - 3 - |
| IV. | ANALYSIS | - 4 - |
| | A. Each of Hartman's claims should be dismissed because interchange fees are paid by the network provider not the consumer. | - 4 - |
| |     1. Hartman does not have standing to bring her claims against FCTI because she has not paid FCTI for an OON balance inquiry | - 6 - |
| | B. Hartman's Combined Cause of Action for Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing Should be Dismissed because Hartman Does not Allege the Existence of a Contract with FCTI. | - 6 - |
| | C. Hartman Cannot Establish Her UCL Claim against FCTI. | - 7 - |
| |     1. Plaintiff Cannot State A Claim Under The "Unlawful" Prong. | - 8 - |
| |     2. Plaintiff Cannot State A Claim Under The "Unfair" Prong. | - 9 - |
| |     3. Plaintiff Cannot State A Claim Under The "Fraudulent" Prong. | - 10 - |
| | D. Hartman Cannot Establish a Claim for Conversion Against FCTI because FCTI Did not Take her Property. | - 10 - |
| | E. Plaintiff Lotsoff Has Not Asserted a Claim against FCTI. | - 11 - |
| V. | CONCLUSION | - 11 - |

Gordon Rees Scully Mansukhani
101 W. Broadway Suite 2000
San Diego, CA 92101

## TABLE OF AUTHORITIES     Page No.

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678-79 (2009) ................................................................... - 3 -

*Bank of Am. v. City & County of S.F.*,
  309 F.3d 551, 554 Fn. 1 (9th Cir. 2002) ................................................. - 5 -

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 555 (2007) ........................................................................ - 3 -

*Brehm v. 21st Century Ins. Co.*
  166 Cal. App. 4th 1225 (2008) ............................................................... - 7 -

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*
  222 Cal. App. 3d 1371, 1393 (2000) ...................................................... - 7 -

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal.4th 163, 179 (1999) ..................................................................... - 8 -

*City & Cty. of San Francisco v. Trump*
  897 F.3d 1225, 1235 (9th Cir. 2018) ...................................................... - 6 -

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163, 173 (2000) .................................................................... - 7 -

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824, 838 (2006) ....................................................... - 10 -

*Fairway Rest. Equip. Contracting, Inc. v. Makino*,
  2015 WL 1578175, at *3 (D. Nev. Apr. 8, 2015) .................................... - 3 -

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
  642 F. Supp. 2d 1012, 1019 (N.D. Cal. 2009) ........................................ - 8 -

*In re ATM Fee Antitrust Litig.*,
  2010 U.S. Dist. LEXIS 97009 10-11 (N.D. Cal. 2010) .......................... - 5 -

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120, 1125 (9th Cir. 2009) ...................................................... - 4 -

*Khoury v. Maly's of Cal., Inc.*,
  14 Cal. App. 4th 612, 619 (1993) ........................................................... - 8 -

*Kransco v. Am. Empire Surplus Lines Ins. Co.*
   23 Cal. 4th 390 (2000) ........................................................................... - 7 -

*Massachusetts v. EPA*,
  549 U.S. 497, 517, (2007) ....................................................................... - 6 -

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235, 1254-55 (2009) ................................................ - 9 -

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
  223 Cal.App.4th 1105, 1133 (2014) .......................................... - 8 -, - 11 -

Gordon Rees Scully Mansukhani
101 W. Broadway Suite 2000
San Diego, CA 92101

| TABLE OF AUTHORITIES | Page No. |
|---|---|

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540, 1547 (2016) ............................................................................. - 6 -

*Starr v. Baca*,
 652 F.3d 1202, 1216 (9th Cir. 2011) ................................................................. - 4 -

*Wall Street Network, Ltd. v. New York Times Co.*
 164 Cal.App.4th 1171 (2008) ............................................................................ - 7 -

**Other Authorities**

15 U.S.C. §1693 ..................................................................................................... - 10 -

**Regulations**

12 C.F.R. § 235 ............................................................................................ - 5 -, - 10 -

Cal. Bus. & Prof. Code § 17200 .............................................................................. - 7 -

Gordon Rees Scully Mansukhani
101 W. Broadway Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii
FCTI'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS          Case No. 18-cv-02033

## I. INTRODUCTION

By this lawsuit, Plaintiff Ashleigh Hartman ("Plaintiff" OR "Hartman")[1] seeks to hold Defendant FCTI, Inc. ("FCTI") liable for automated teller machine ("ATM") fees she contends were wrongfully assessed for her election to obtain balance inquiries while using an out of network ("OON") ATM. The fatal flaw in Plaintiff's claims is that the fees at issue were assessed by their own financial institution not FCTI, who is an independent ATM operator that merely receives an interchange fee from network providers, not the consumer.

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs' First Amended Complaint ("FAC") alleges, Plaintiffs are Wells Fargo Bank ("Wells Fargo") checking account holders. FAC ¶¶ 7-8. Wells Fargo provides retail banking services including issuing debit cards for use by customers in accessing their checking account. FAC ¶ 9. FCTI is an owner and operator of independent ATM machines. FAC ¶ 11.

ATM customers who perform OON ATM balance inquiries can be charged fees by *their banks* for this service. FAC ¶¶ 113-114. In addition, ATM operators may be paid "interchange fees" for this service. *Id*. Interchange fees are fees paid to the ATM operator by the various networks that connect ATM machines to the customer's financial institution. FAC ¶ 116.

Interchange rates can vary depending upon which network is offering the connection between the ATM machine and the financial institution. FAC ¶ 116. Declining interchange rates have led ATM operators to seek additional revenue streams including using "balance at start" screen pages to induce customers into electing to perform a balance inquiry. FAC ¶¶ 126-127.

---

[1] The FAC is not entirely clear but it appears that only Hartman is asserting claims against FCTI. FCTI's counsel sought clarification of this issue but did not receive a response from Plaintiff's counsel prior to filing this motion. (Declaration of Benjamin Morton ¶ 3 and Exhibit "1" thereto. Accordingly, the motion is brought as to the claims asserted by Helen Lotsoff as well.

- 1 -
FCTI'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS                                          Case No. 18-cv-02033

FCTI duped OON ATM customers into conducting balance inquiries, which resulted in two charges being assessed by the customer's bank. FAC ¶¶ 166-167.

On June 20, 2018, Hartman conducted a OON ATM transaction at a 7/11 store by using her Wells Fargo debit card at a FCTI machine. FAC ¶ 244. She withdrew $20 and was charged the following charges by *Wells Fargo*: $2 fee for OON balance inquiry; $2 fee for OON cash withdrawal; and second OON balance inquiry fee of $2. *Id.* The only fee assessed by FCTI was a "surcharge fee" for using its machine, but those fees are not a part of Plaintiffs' claims in this matter. *Id.* and FAC ¶ 111. There are no specific allegations that Plaintiff Lotsoff ever used a FCTI machine and incurred any fees. *See* generally FAC.

In support of her breach of contract/breach of the implied covenant of good faith and fair dealing claim, Hartman alleges that Wells Fargo permits FCTI to determine "when and how" an OON transaction occurs and receives interchange fees from Wells Fargo in connection with balance inquiry transaction. FAC ¶ 276. There are no allegations that FCTI has a contractual relationship, either oral, written or implied, with either of the Plaintiffs. *See*, FAC ¶¶ 268-278.

In support of her Violation of the Unfair Competition Law ("UCL"), Hartman alleges that Wells Fargo permits FCTI to determine "when and how" an OON transaction occurs and its screen prompts are misleading to the public. FAC ¶ 318. She claims this is an "unfair" and "fraudulent" business practice but does not specifically allege it is unlawful. *See*, FAC ¶¶ 318 and 320.

In support of her conversion claim, Hartman alleges that FCTI uses deceptive screen prompts to trick customers into conduct balance inquiry transactions for which they are charged OON fees by Wells Fargo. FAC ¶¶ 337-338.

Based on the above allegations, Hartman asserts three claims against FCTI on behalf of herself and the "FCTI ATM Class" for: (1) breach of contract/breach of the covenant of good faith and fair dealing; (2) violation of the UCL; and (3)

conversion.

## III.   LEGAL STANDARD

To survive dismissal, a plaintiff must allege *facts* that demonstrate a "plausible" basis for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the United States Supreme Court has made plain, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Under the *Twombly/Iqbal* plausibility standard, a plaintiff will not survive dismissal with "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Thus, when deciding a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Twombly*, 550 U.S. at 555.

"When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed." *Fairway Rest. Equip. Contracting, Inc. v. Makino*, 2015 WL 1578175, at *3 (D. Nev. Apr. 8, 2015). A claim is "plausible" only when the factual allegations allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a claim is "plausible" is a "context-specific" exercise. *Id.* at 663. And it is one in which a court is permitted and expected "to draw on its experience and common sense." *Id.* at 663-64. Factual allegations that are "merely consistent with" a defendant's liability nonetheless fail under the plausibility standard. *Id.* The same is true with respect to factual allegations that establish no "more than a sheer possibility" of liability. *Id.*

/ / /

As the Ninth Circuit has opined, the "plausibility" requirement protects defendants from unfairly "be[ing] subjected to the expense of discovery and continued litigation":

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Plaintiffs' claims also sound in fraud under the UCL. *See*, *e.g.*, FAC ¶ 318. Consequently, Hartman must meet Rule 9(b)'s heightened pleading standards. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (all claims "grounded in fraud" or "sound[ing] in fraud" are governed by Rule 9(b)). To do so, Plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction." *Id.* at 1124 (emphasis in original). Rather, she must plead, with particularity, the who, what, when, where and how of any allegedly fraudulent conduct. *Id.* Failure to do so provides independent grounds for dismissal.

## IV. ANALYSIS

### A. Each of Hartman's claims should be dismissed because interchange fees are paid by the network provider not the consumer.

Importantly, an OON ATM transaction involves four parties: "(1) the "cardholder," *i.e.*, the customer who retrieves money from the ATM machine; (2) the "card-issuer bank," i.e, the bank at which the customer holds an account and from which the customer has received an ATM card; (3) the "ATM owner," *i.e.*, the entity that owns the ATM machine from which the customer withdraws money from his account; and (4) the "ATM Network," *i.e.*, an entity that owns a network that connects the ATM owners with the card-issuing banks. The ATM Network administers agreements between various card-issuer banks and ATM owners and

- 4 -

thereby ensures that customers can withdraw money from one network member's ATM as readily as from another." *In re ATM Fee Antitrust Litig.*, 2010 U.S. Dist. LEXIS 97009 10-11 (N.D. Cal. 2010)*; see, also, Bank of Am. v. City & County of S.F.,* 309 F.3d 551, 554 Fn. 1 (9th Cir. 2002).

"Generally, a customer must pay two fees — one to the ATM owner for use of that entity's ATM machine (known as a "surcharge") and one to the bank at which he has an account (known as a "foreign ATM fee")." *Id.*

Plaintiff admits that she does not personally pay the interchange fees that FCTI receives when a customer uses its ATMs. FAC ¶¶ 276 and 339. Rather, she pays fees directly to her financial institution, Wells Fargo, for the use of OON ATMs. FAC ¶¶ 113, 276, 319 and 338. It is the fees that are paid to Wells Fargo that form the basis of any claim for damages under the three claims asserted against FCTI.

The fact that FCTI has an independent commercial agreement with a network provider by which it is compensated when customers use its machines for transactions is not independently actionable. Title 12, section 235.1, et seq. of the Code of Federal Regulations governs the "standards for reasonable and proportional interchange transaction fees for electronic debit transactions." 12 CFR 235.1 (b). "Interchange transaction fees" are "any fee established, charged, or received by a payment card network and paid by a merchant or an acquirer for the purpose of compensating an issuer for its involvement in an electronic debit transaction." 12 CFR 235.2(j). An "(a)cquirer means a person that contracts directly or indirectly with a merchant to provide settlement for the merchant's electronic debit transactions over a payment card network." 12 CFR 235.2(b). A merchant means "any person that accepts debit cards as a payment." 12 CFR 235.2(l). Issuer means "any person that authorizes the use of a debit card to perform an electronic debit transaction." *Id.* at subsection (k). Applying these definitions to Hartman's allegations, Wells Fargo is the "merchant", the network is

- 5 -
FCTI'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS                                           Case No. 18-cv-02033

the "acquirer" and FCTI is the "issuer."  Because interchange fees are paid either by merchants (here Wells Fargo) or acquirers, an entity like Fiserv that facilitates an ATM transaction through various networks, the payment of those fees is not actionable by Hartman.  In short, Hartman is not paying the interchange fee.

          1.    *Hartman does not have standing to bring her claims against FCTI because she has not paid FCTI for an OON balance inquiry.*

Hartman did not pay the interchange fee she complains of and therefore has no case or controversy with FCTI.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy . . . [that] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Standing exists only where the plaintiff demonstrates "that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517, (2007)." *City & Cty. of San Francisco v. Trump* (9th Cir. 2018) 897 F.3d 1225, 1235.)  Here it appears Hartman's complaints relate solely to fees paid to Wells Fargo.  The commercial arrangement by which FCTI receives payments from interchange transactions is of no moment to Hartman's claims because her fees are solely the product of her agreements with Wells Fargo.  As such, she lacks standing under Article III of the United States Constitution.

**B.** **<u>Hartman's Combined Cause of Action for Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing Should be Dismissed because  Hartman Does not Allege the Existence of a Contract with FCTI.</u>**

Hartman alleges the existence of a contract with Wells Fargo and even attaches copies to her FAC for the Court's scrutiny.  FAC ¶ 268 and Exhibits A-C.  No such allegations are made as to FCTI.  The standard elements of a claim for breach of contract are (1) the existence of a contract, (2) plaintiff's performance or

- 6 -
FCTI'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS                                                          Case No. 18-cv-02033

excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178.   Similarly, there must be an underlying contract for there to be a breach of the implied covenant. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* (2000) 222 Cal. App. 3d 1371, 1393 ["Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose."]; *Kransco v. Am. Empire Surplus Lines Ins. Co.* (2000) 23 Cal. 4th 390, 400 ["Because the covenant is a contract term, in most cases compensation for its breach is limited to contract rather than tort remedies."].  The implied covenant is merely designed to supplement a contractual right it does not create an independent existence. *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal. App. 4th 1225, 1235, ["[T]he covenant is based on the contractual relationship … Absent that contractual right, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings."].

Hartman's allegations are completely devoid of any allegation that there exists a contract between her and FCTI.  This is, self evidently, because none exist between FCTI and any of the customers that use its publically available ATM machines.  Thus, without establishing the existence of a valid contract – Hartman cannot prove an essential element of her breach of contract and breach of the implied covenant claims.

### C.     **Hartman Cannot Establish Her UCL Claim against FCTI.**

Hartman's UCL claim "is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000).  To state a UCL claim, a plaintiff must allege *facts* showing that the defendant engaged in unfair, unlawful, or fraudulent business conduct, as well as the essential elements necessary to state such a claim. Cal. Bus. & Prof. Code § 17200, *et seq*.  Plaintiff fails to meet her pleading burden; she has not and cannot

- 7 -
FCTI'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS                                          Case No. 18-cv-02033

Gordon Rees Scully Mansukhani
101 W. Broadway Suite 2000
San Diego, CA 92101

plead facts showing that FCTI's purported conduct was unfair, unlawful, or fraudulent.

Although Hartman seeks actual damages under the UCL, this remedy is not available to her. "A distinguishing feature of the UCL is that it does not provide a private action for damages or other legal remedies. Instead, the UCL provides an equitable means to prevent unfair practices in the future and restore money or property to victims of those practices. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 179 (1999). Thus, remedies are limited to injunctive relief and restitution." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1133 (2014). Here, restitution is an impossible remedy because FCTI has not received anything from Hartman or any other customer for OON balance inquiries. Similarly, Hartman has failed to allege any specific injunctive relief that she contends is appropriate or justified. Her claims relate to fees she paid to Wells Fargo for using FCTI's ATM on June 20, 2018. No injunctive relief directed to FCTI will affect her fee agreement with her bank. For this reason alone, her claim for violation of the UCL fails in its entirety.

Hartman only specifically alleges FCTI's conduct was unfair and fraudulent, not unlawful. FAC ¶¶ 318, 320-322. Nonetheless, FCTI consider each prong of the UCL in turn:

### 1. *Plaintiff Cannot State A Claim Under The "Unlawful" Prong.*

A business practice is "unlawful" under Section 17200 only if it violates an underlying state or federal statute or common law. *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1019 (N.D. Cal. 2009). To state a claim for an unlawful business practice, a plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation and/or facts which demonstrate that the practice violates the underlying law or "borrowed claim." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).

/ / /

Plaintiff claims that the "deceptive manner in which FCTI designed and presented their screen prompts at their ATM machines to consumers misled Plaintiff". FAC ¶ 318. As demonstrated herein, however, Plaintiff has failed entirely to plead an underlying breach of contract or conversion claim. Her claim of "unlawful" conduct therefore fails.

2. *Plaintiff Cannot State A Claim Under The "Unfair" Prong.*

To state a claim for an "unfair" business practice, a plaintiff must allege that "(1) the consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254-55 (2009). Here, Plaintiff fails to properly plead any of the necessary elements. There is nothing unfair about FCTI receiving an interchange fee from a network provider for a customer's use of its ATM machines. This is the result of a commercial agreement between FCTI and that respective provider. The fact that Hartman became indebted to Wells Fargo for various transactions at a FCTI ATM is a matter between Hartman and Wells Fargo.

In short, FCTI provides a service to consumers who don't have ready or immediate access to their own financial institution's ATMs. Financial institutions and their customers agree to what the customer will pay for the convenience of using the OON ATMs. FCTI has no involvement in those agreements and in the case of OON balance inquiries does not charge the customer anything. There is nothing unfair about placing ATMs in places where the public may find them useful, such as in convenience stores and shopping malls. The customer can make their decision whether the convenience of their use outweighs the potential that their financial institution will assess fees for that service. Accordingly, Plaintiff's claim of "unfair" conduct fails.

///

### 3. *Plaintiff Cannot State A Claim Under The "Fraudulent" Prong.*

Plaintiff cannot state a claim under the UCL's "fraudulent" prong. To state a claim for "fraudulent" business practices, a plaintiff must show that the alleged practice is likely to deceive members of the public. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006). Plaintiff cannot do so here for multiple reasons.

First, neither Regulation E or the Electronic Funds Transfer Act ("EFTA") require that an ATM operator disclose that it will receive an interchange fee. Regulation E requires that the operator provide notice only if it is going to assess a fee for an electronic funds transfer (such as a cash withdrawal) or balance inquiry. 12 CFR 1005.16(b); See also 15 U.S.C. §1693, et seq. As Hartman admits, the only fee being assessed is by Wells Fargo for this transaction. FAC ¶ 318. FCTI may receive an interchange fee for the transaction but the fees Hartman complains are the source of her damages are solely being assessed by her bank.

Second, Hartman fails to allege facts that would support FCTI's knowledge of what agreements she entered into with Wells Fargo regarding OON ATM usage. If FCTI is alleged to have defrauded Hartman so as to induce her into paying exorbitant fees then FCTI would have to be alleged to not only be knowledgeable about her arrangement with Wells Fargo but to have some mutually beneficial agreement with Wells Fargo. No such agreement is alleged because none exists.

### D. **Hartman Cannot Establish a Claim for Conversion Against FCTI because FCTI Did not Take her Property.**

Hartman admits that the OON balance inquiry fees were assessed and collected by Wells Fargo. FAC ¶ 338. FCTI's collection of an interchange fee does not amount to conversion of her personal property. "Conversion is the wrongful exercise of dominion over the property of another. (*Citation*) The elements of a claim for conversion are: (1) "the plaintiff's ownership or right to possession of the property at the time of the conversion, (2) the defendant's

conversion by a wrongful act or disposition of property rights, and (3) damages. It is not necessary that there be a manual taking of the property, only an assumption of control or ownership over the property, or that the alleged converter has applied the property to his [or her] own use." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1135 (2014).  Because FCTI did not charge Hartman a fee for her balance inquiry transaction there can be no claim for conversion.  In short, any loss she suffered in the way of fees was a result of her agreements with her bank.

### E. Plaintiff Lotsoff Has Not Asserted a Claim against FCTI.

The FAC is somewhat confusing in that there are pages of general allegations regarding Wells Fargo's imposition of fees and FCTI's (and confusingly it's competitor Cardtronics') ATM operations.[2]  A close reading, however, shows that only Hartman is alleged to have used a FCTI machine.  FAC ¶ 244.  Specific allegations related to Lotsoff's claims only relate to her non ATM transactions with Wells Fargo.  FAC ¶ 77.  However, because of the uncertainty in the pleading FCTI also seeks an order that to the extent any claim is being asserted by Lotsoff against FCTI is dismissed for lack of standing since Lotsoff does not allege she used a FCTI ATM at any time.

## V. CONCLUSION

FCTI's motion should be granted.  The exchange fees are not actionable.

Dated:  October 5, 2018          GORDON REES SCULLY MANSUKHANI

By:  */s/ Benjamin T. Morton*
Benjamin T. Morton
Shelby A. Poteet
Attorneys for Defendant FCTI, INC.

---

[2] Plaintiffs fail to state which of the two named plaintiffs are alleging a particular cause of action against FCTI in their headings.  However, a close reading of the FAC suggests on Hartman is making claims against FCTI.  See, FAC ¶¶ 267, 307 and 336.

- 11 -
FCTI'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS                                                  Case No. 18-cv-02033

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani 101 W. Broadway, Suite 2000, San Diego, CA 92101, my electronic mail address is mcerezo@grsm.com. On October 5, 2018, I served the foregoing document entitled: **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** as follows:

☒ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to the email address(es) listed in the Electronic Mail Notice List and denoted below, which constitutes service pursuant to FRCP 5(b)(3).

**Counsel for Plaintiffs:**

Todd D. Carpenter
CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
1350 Columbia Street, Suite 603
San Diego, CA 92101
Phone: 619-762-1910
Fax: 619-756-6991
Email: tcarpenter@carlsonlynch.com

**Counsel for Defendant WELLS FARGO BANK, N.A.:**

Alejandro E. Moreno
Edward D. Vogel
SHEPPARD, MULLIN, RITCHER & HAMPTON, LLP
501 West Broadway, 19th Floor
San Diego, CA 92101
Phone: 619-338-6500
Fax: 619-234-3815
Email: amoreno@sheppardmullin.com
evogel@sheppardmullin.com

**Counsel for Defendant FCTI, INC.**

Scott Lam
FCTI, INC.
11766 Wilshire Blvd., Suite 1100
Los Angeles, CA 90025
Phone: 310-402-0646
Email: joliver@moginrubin.com

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 5, 2018 at San Diego, California.

_____
Maria G. Cerezo