Todd D. Carpenter (CA 234464)
    tcarpenter@carlsonlynch.com
Brittany C. Casola (CA 306561)
    bcasola@carlsonlynch.com
**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
1350 Columbia St. Ste. 603
San Diego, CA 92101
Tel: (619) 762-1900
Fax: (619) 756-6991

Jeffrey D. Kaliel (CA 238293)
    jkaliel@kalielpllc.com
Sophia Gold (CA 307971)
    sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
Tel: (202) 350-4783

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN LOTSOFF and ASHLEIGH HARTMAN, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>WELLS FARGO BANK, N.A., FCTI, INC. and DOES 1-50, inclusive,<br><br>     Defendants. | Case No.  3:18-cv-2033-AJB-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT FCTI, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: January 10, 2019<br>Time: 2:00 p.m.<br>Courtroom 4A<br><br>Honorable Anthony J. Battaglia |

# **TABLE OF CONTENTS**

I.   INTRODUCTION…………………………………………………………1

II.  STATEMENT OF FACTS……………………………………………......1

III. LEGAL STANDARD……………………………………………………3

IV.  ARGUMENT……………………………………………………………4

    A.   Plaintiff Has Standing to Pursue Her Claims……………………………..4

    B.   Breach of Contract………………………………………………………6

    C.   Plaintiff Adequately States a Claim for Violation of the UCL…………...6

        1.   Plaintiff Adequately Asserts a Claim Under the "Unfair"  Prong….….7

        2.   Plaintiff Adequately Asserts a Claim Under the "Fraudulent" Prong…9

    D. Plaintiff Adequately States a Claim for Conversion………………………10

V.   CONCLUSION…………………………………………………………...11

# TABLE OF AUTHORITIES

*Cases*                                                                 *Page*

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007)……………………………………….…..4

*Camacho v. Auto. Club of S. California*,
    142 Cal. App. 4th 1394 (2006)……………………………………………8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*,
    20 Cal. 4th 163 (1999)…………………………………………………6

*Chodos v. West Pub. Co.*,
    292 F.3d 992 (9th Cir. 2002)…………………………………………11

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010)…………………………………………………8

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990)…………………………………………,11

*Forman v. Davis*,
    371 U.S. 178 (1962)…………………………………………………..11

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017)…………………………………...6, 7

*Hahn v. Massage Envy Franchising, LLC*,
    No. 12CV153 DMS (BGS), 2013 WL 12187499 (S.D. Cal. Sept. 17, 2013)……..4

*In re iPhone 4S Consumer Litigation*,
    No. C12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013)………………11

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)…………………………………………..…5

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011)…………………………………………...6, 8

*Lloyd v. Navy Federal Credit Union*,
    No. 17-cv-1280-BAS-RBB, 2018 WL 1757609 (S.D. Cal. Apr. 12, 2018)……....3

*Lozano v. AT&T Wireless Services, Inc.,*
        504 F.3d 718 (9th Cir. 2007)……………………………………………………6, 7

*McKell v. Wash. Mut., Inc.,*
        142 Cal. App. 4th 1457 (2006)……………………………………………… …7

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC,*
        165 F. Supp. 3d 937 (S.D. Cal. 2016)………………………………………...…5

*Olenicoff v. UBS AG,*
        No. SACV 08-1029 AG (RNBx), 2010 WL 8530286 (C.D. Cal. Mar. 16, 2010)..11

*People ex rel. Renne v. Servantes,*
        86 Cal. App. 4th 1081 (2001)……………………………………………………6

*Thesier-Hendricks v. TJL Enterprises, Inc.,*
        No. LACV1500477JAKSSX, 2015 WL 10791893 (C.D. Cal. Aug. 3, 2015)…...4

*Welco Electronics, Inc. v. Mora,*
        223 Cal. App. 4th 202 (2014)……………………..…………………………..10

*Williams v. Gerber Products Co.,*
        552 F.3d 934 (9th Cir. 2008)……………………………………………..9

*Woodard v. Labrada,*
        No. EDCV1600189JGBSPX, 2017 WL 3309765 (C.D. Cal. July 31, 2017)…5, 6

**Statutes**

Cal. Bus. & Prof. Code § 17200………………………………………………..3, 6
Cal. Bus. & Prof. Code § 17500………………………………………………..5
12 C.F.R. 1005.16(b)…………………………………………………………..9

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In its motion, FCTI attempts to absolve itself of responsibility for its own deceptive conduct by placing the blame on Wells Fargo. That finger-pointing fails, since Plaintiff challenges FTCI's independent wrongdoing. Plaintiff's Complaint alleges FCTI designed a series of deceptive screen prompts that lure unsuspecting consumers into engaging in balance inquiry transactions that they would not otherwise purchase. FCTI intentionally and systematically fails to inform consumers that they will be charged a fee for these balance inquiry transactions. FCTI then inappropriately double bills consumers for single balance inquiry transactions by inaccurately conveying to Wells Fargo that the consumer has engaged in multiple balance inquiries. FCTI cannot escape liability merely because Wells Fargo receives the money first. Indeed, FCTI *concedes that it profits* from each balance inquiry it deceptively foists on consumers in the form of an interchange fee. As explained herein, FCTI's unfair and deceptive conduct is actionable under the UCL. Plaintiff has also stated a claim against FCTI for conversion.

### II.   STATEMENT OF FACTS

FCTI employs a deceptive scheme of misleading unsuspecting customers into engaging in checking account balance inquiries at its non-bank affiliated ATM machines. (*See generally* Dkt. No. 1-5, First Amended Class Action Complaint ("FAC") ¶¶ 165–195.) The reason for doing so is plain: for each "balance inquiry" a customer conducts at an FCTI ATM machine, the consumer is assessed an out-of-network fee by Wells Fargo, and as a result, a portion of that fee is paid to FCTI in the form an "interchange fee." (*Id.* ¶¶ 111–130, 276, 339.)  In a world where the occurrence of balance inquiries at independent ATM machines has substantially declined, FCTI stands to gain a significant increase in revenue by exploiting consumers and conjuring up phantom balance inquiry transactions. (*Id.* ¶¶ 115–125.)

To execute this scheme, FCTI utilizes deceptive screen prompts that are specifically designed to trick customers into engaging balance inquiry transactions that customers

1

would not otherwise purchase. (*Id.* ¶¶ 170–195.)  But the misleading practice does not end there.  After fraudulently luring consumers into making balance inquiries at the outset of the transaction—transactions that the consumer was not even initially aware they were conducting—FCTI then unconscionably causes the customer to be ***double-billed*** for those single balance inquiry transactions by inaccurately communicating to Wells Fargo that the customer has engaged in multiple balance inquiries.  (*Id.* ¶¶ 165–169.)

To illustrate, upon engaging an FCTI ATM machine to conduct a simple cash withdrawal, users are immediately presented with a screen prompt asking if the customer would like to "view" his or her account balance.  (*Id.* ¶¶ 170–195.) Unwitting customers, including each of the FCTI Plaintiffs, have no idea that answering "Yes" at the FCTI ATM was an event that would cause a fee, both because they are never expressly warned it will be the basis for a fee, and for several other reasons.  (*Id.*)  First, and as is the fundamental intention of Balance Inquiry at Start, the fact that the very first screen presented is a question regarding a balance inquiry is an indication to reasonable consumers that they must select "Yes" in order to proceed.  Moreover, the ATM user is never asked the simple question "Would you like to perform a balance inquiry?"  (*Id.*)  Especially under the quick time constraints of a real world ATM transaction, reasonable consumers do not understand that "viewing your account balance" as a first step to making a cash withdrawals is equivalent to performing a separate "balance inquiry."  (*Id.*)  At that time, the customer has only a binary option, to select "yes" or "no," which indicates to a reasonable consumer that he or she must select "yes" in order to proceed with the transaction. (*Id.*)

If the customer selects "yes" and then selects an account, the available balance is displayed on the screen with a prompt asking: "Would you like to print your Balance and continue the Transaction?"  (*Id.*)  Again, the customer is presented with only a binary option, to "cancel" or "continue," which indicates to a reasonable consumer that he or she must select "continue" in order to proceed with the intended cash withdrawal. (*Id.*)  However, if the customer selects "continue," the transaction abruptly ends and then requires the customer to re-enter his or her PIN, apparently forcing the customer to engage

in a second, separate transaction.  (*Id.*)  Once a customer re-enters his or her PIN, the screen asks if the customer would like "a receipt for *this* transaction," but at no time during this second "transaction" does the screen prompt mention viewing, inquiring, or printing a balance.  (*Id.*)  After the customer selects "yes" or "no" to the receipt request, the screen then prompts the customer to select the desired transaction (*i.e.,* "withdrawal," "inquiry," "transfer," or "fast cash.").  (*Id.*)  As a result, the customer is inexplicably charged ***two*** balance inquiry fees arising from a single cash withdrawal transaction.  (*Id.*)

Wells Fargo and other consumers' banks assess customers out-of-network balance inquiry fees based on the information that FCTI provides it.  (*Id.*) FCTI also directly profits from this scheme. For each balance inquiry transaction, FCTI is paid a portion of the balance inquiry fee in the form of an interchange fee. (FAC ¶¶ 4, 193.)

On or around June 20, 2018, Plaintiff Ashleigh Hartman fell prey to this deceptive scheme when she used an FCTI ATM located at a 7-11 convenience store in San Diego in order to make a $20.00 cash withdrawal.  (*Id.* ¶ 244.)  Following her transaction, she was surprised to learn that she was assessed, in addition to the cash withdrawal surcharge paid to FCTI ($2.95), ***two*** separate $2.00 fees from Wells Fargo for making two out-of-network balance inquiries, and an additional $2.50 fee from Wells Fargo for making an out-of-network cash withdrawal.  (*Id.*)  In sum, Plaintiff Hartman was charged ***$9.45*** total in fees for making a $20.00 cash withdrawal.  (*Id.*)

Plaintiff Hartman asserts claims against FCTI on behalf of herself and similarly situated Wells Fargo checking account holders in California for violation of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and conversion arising from FCTI's deceptive practices.

## III.   **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Lloyd v. Navy Federal Credit Union,* No. 17-cv-1280-BAS-RBB, 2018 WL 1757609, at *4 (S.D. Cal. Apr. 12, 2018).  In ruling on such

3

motion, the court must accept as true the well-plead allegations and construe "those allegations in the light most favorable to the plaintiff." *Id.*

## IV.   ARGUMENT

### A.   Plaintiff Has Standing to Pursue Her Claims

FCTI first argues, in cursory fashion, that Plaintiff lacks standing under Article III because "Hartman's complaints relate solely to fees paid to Wells Fargo." (Def.'s Br. at 6.) FCTI interprets Article III too narrowly. To establish standing under Article III, a plaintiff need only (1) suffer an injury in fact, (2) fairly traceable to the challenged conduct, and (3) show that the injury is likely to be redressed by a favorable decision. *Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007). With respect to the first "injury in fact" element, there is no dispute that Plaintiff's payment of balance inquiry fees constitutes an injury in fact.

With respect to the second element, FCTI apparently argues the balance inquiry fees are not "fairly traceable" to conduct by FCTI. But that barebones assertion is contradicted by the well-pled allegations in Plaintiff's complaint. *See Thesier-Hendricks v. TJL Enterprises, Inc.*, No. LACV1500477JAKSSX, 2015 WL 10791893, at *8 (C.D. Cal. Aug. 3, 2015) ("[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to establish standing]."). Plaintiff alleges that unfair and deceptive conduct by FCTI caused Plaintiff to pay balance inquiry fees to Wells Fargo. (*See* FAC ¶¶ 170–195.) Specifically, FCTI utilizes deceptive screen prompts that are specifically designed to trick customers into engaging balance inquiry transactions that customers would not otherwise purchase. (*Id.*) Moreover, FCTI then causes consumers to be double billed for those balance inquiry transactions by inaccurately communicating to Wells Fargo that the customer has engaged in multiple balance inquiries. (*Id.* ¶¶ 165–169.) In other words, the balance inquiry fees Plaintiff paid are directly traceable to conduct by FCTI. *See Hahn v. Massage Envy Franchising, LLC*, No. 12CV153 DMS (BGS), 2013 WL 12187499, at *2 (S.D. Cal. Sept. 17, 2013) ("To show the plaintiff's injury is fairly traceable to the defendant, the plaintiff need not demonstrate proximate cause, only

4

1  'a line of causation between defendan[t's] action and [the] alleged harm that is more than

2  attenuated.'").

3      FCTI's strained interpretation of Article III would eviscerate basic principles of tort

4  liability. For instance, if a plaintiff was only entitled to sue the party to whom a plaintiff

5  paid her money, a plaintiff would not have standing to sue a manufacturer of a defective

6  consumer product sold by a retailer, a corporation that disseminated a deceptive label sold

7  by a retailer, or a financial services company who illegally received a kickback on a

8  financial product. That is not the law. *See Woodard v. Labrada,* No.

9  EDCV1600189JGBSPX, 2017 WL 3309765, at *11 (C.D. Cal. July 31, 2017) ("Courts

10  have embraced common law doctrines of secondary liability to hold any person part of a

11  common scheme to engage in unfair business practices liable."). Indeed, the UCL

12  specifically imposes liability on a defendant who "directly or indirectly . . . cause[s] [a

13  misleading statement] to be made or disseminated before before the public . . ." Cal. Bus.

14  & Prof. Code § 17500. There is no requirement under either the UCL or Article III that the

15  plaintiff engage in a direct business dealing with the defendant. *See Obesity Research Inst.,*

16  *LLC v. Fiber Research Int'l, LLC,* 165 F. Supp. 3d 937, 948 (S.D. Cal. 2016).

17      Finally, Plaintiff has adequately alleged that injury is likely to be redressed by a

18  favorable decision. If Plaintiff succeeds on the merits, Plaintiff will ask the Court to award

19  both restitution and injunctive relief. While the Court need not decide the scope of that

20  relief now, enjoining FCTI from continuing to engage in its unfair and deceptive practices

21  and ordering FCTI to return all funds wrongfully obtained from its conduct would provide

22  adequate redress to Plaintiff for her claims.[1] Plaintiff therefore has standing under Article

23  III.

24  _____

25

26  [1] FCTI incorrectly argues "restitution is an impossible remedy because FCTI has not received anything from Hartman or any other customer for OON balance inquiries." (Def.'s

27  Br. at 8.) While the precise nature of the restitution relief is unnecessary for the Court to resolve at this stage in the litigation, restitution is certainly not *impossible*. Restitution is a

28  broad equitable remedy designed to "restore to the parties in interest money or property taken by means of unfair competition." *In re Tobacco II Cases,* 46 Cal. 4th 298, 313 (2009).

**B.    Breach of Contract**

Plaintiff brings her breach of contract claim against Defendant Wells Fargo. Plaintiff does not bring a cause of action for breach of contract against Defendant FCTI.

**C.    Plaintiff Adequately States a Claim for Violation of the UCL**

California's Unfair Competition Law (the "UCL") is "a broad remedial statute that permits an individual to challenge wrongful business conduct 'in ***whatever context*** such activity might occur.'" *Lozano v. AT&T Wireless Services, Inc.,* 504 F.3d 718, 731 (9th Cir. 2007) (emphasis added), citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.,* 20 Cal. 4th 163 (1999)).  The UCL is "intentionally broad to give the court maximum discretion to control whatever new schemes may be contrived, ***even though they are not yet forbidden by law***."  *People ex rel. Renne v. Servantes,* 86 Cal. App. 4th 1081, 1095 (2001) (emphasis added).  The UCL "creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent," and each prong is independently actionable. *Hadley v. Kellogg Sales Co.,* 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017), citing Cal. Bus. & Prof. Code § 17200.

Moreover, "[t]he UCL casts a wide net: potential defendants under section 17200 extend beyond the actual perpetrators of unlawful, unfair, or fraudulent acts." *Woodard*, 2017 WL 3309765, at *12. "[C]ourts have held defendants liable under the UCL on agency principles, on theories of aiding and abetting, furnishing the means, and civil conspiracy." *Id*. A defendant's conduct on its own need not satisfy every element of the UCL.  *Id*. at *11.

Plaintiff adequately states a claim against FCTI under the unfair and fraudulent prongs of the UCL. At the outset, it bears noting that FCTI cannot hide behind Plaintiff Hartman's contract with Wells Fargo to evade liability from its independently fraudulent

---

Here, Plaintiff alleges FCTI receives a portion of the balance inquiry fees in the form of interchange fees. Disgorgement of these interchange fees is therefore one potential restitutionary remedy. In any event, entitlement to restitution is not an element of the standing analysis. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011).

6

conduct.  FCTI incessantly points the finger at Wells Fargo by arguing that Wells Fargo is the source of Hartman's out-of-network fees, and "the fact that Hartman became indebted to Wells Fargo for various transactions at a[n] FCTI ATM is a matter between Hartman and Wells Fargo."  (Deft. Br. at 9.)  But FCTI cannot immunize itself from liability based on Wells Fargo's independent actions. While Wells Fargo was not authorized to charge OON Fees for balance inquiries at all, it could not have done so without FCTI's deceptive screen prompts, which caused Hartman to unknowingly incur these fees. FCTI then relayed inaccurate information to Wells Fargo regarding the number of balance inquiries supposedly undertaken.  Wells Fargo then charged Plaintiff fees, and then paid off FCTI with interchange fees.  (FAC ¶¶ 4, 193.)  FCTI can be held liable for its role because its actions in part caused the fees paid by Plaintiff and because FCTI profited from those fees.

Moreover, FCTI's misleading screen prompts that lure customers into mistakenly conducting (multiple) balance inquiries, causing them to be charged **double fees** for single transactions, is independently deceptive and actionable.  In other words, despite FCTI's contentions to the contrary, it is not necessary for FCTI to know (and Plaintiff need not allege) the details of Hartman's contractual arrangement with Wells Fargo in order for Plaintiff to plausibly allege that FCTI is engaged in an independently deceptive practice which caused Plaintiff to incur unnecessary balance inquiry fees.  Accordingly, FCTI's arguments must fail.

### 1.  Plaintiff Adequately Asserts a Claim Under the "Unfair" Prong

An "unfair" business practice under the UCL encompasses activity that "violates established public policy or if it's immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweigh its benefits." *McKell v. Wash. Mut., Inc.,* 142 Cal. App. 4th 1457, 1473 (2006).  Both of these tests, referred to as the "tethering" and "balancing" tests, respectively, have been endorsed by the Ninth Circuit  as applied to consumer actions. *See Hadley,* 243 F. Supp. 3d at 1104, citing *Lozano,* 504 F.3d at 735–36.  Lastly, a third test, the "FTC Act test," has also been applied to consumer actions and determines "unfairness" exists if (1) the consumer injury is substantial; (2) the injury is not

7

outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not have reasonably been avoided.  *Camacho v. Auto. Club of S. California,* 142 Cal. App. 4th 1394, 1401–03 (2006).  In any event, Plaintiff sufficiently states a claim for violation of the "unfair" prong under both the "balancing test" and the "FTC Act test."

With respect to the "balancing test," Plaintiff alleges that FCTI's conduct is immoral, unethical, unconscionable, and substantially injurious to consumers.  (FAC ¶ 322.) Specifically, Plaintiff alleges that FCTI's utilization of "deceptive screen prompts" and the resulting "unconscionable assessment of double-charging out-of-network balance inquiry fees for single balance inquiry transactions outweighs the utility to Defendants, if any" and that these practices are "substantially injurious to consumers in that they have been forced to pay double the amount of out-of-network balance inquiry fees than necessary." (*Id.* ¶¶ 321, 323.)

Plaintiff has also satisfied the FTC Act test. (*Id.* ¶¶ 318–320.) Plaintiff demonstrates a substantial injury by alleging that FCTI caused consumers to be billed double the amount of out-of-network balance inquiry fees for seemingly conducting single balance inquiry transactions, and that FCTI's conduct causing such to happen is not outweighed by any countervailing benefits to consumers or competition. *See Kwikset,* 51 Cal. 4th at 323 (finding economic injury "for those who had had business dealings with a defendant and had lost money or property as a result of defendant's unfair business practices"); *see also Clayworth v. Pfizer, Inc.,* 49 Cal. 4th 758, 788 (2010).  Lastly, Plaintiff alleges the substantial injury could not reasonably have been avoided because "had Plaintiff known" she would be charged two balance inquiry fees for conducting a single balance inquiry transaction prior to withdrawing funds at an FCTI ATM machine, "she would not have used FCTI's ATM machine for her desired transaction." (*Id.* ¶¶ 318–320.)  Thus, Plaintiff satisfies her pleading burden under both tests.

Notably, FCTI does not articulate how Plaintiff fails to satisfy these elements. Rather, it contends "there is nothing unfair about FCTI receiving an interchange fee" for customers' use of out-of-network ATM machines and "nothing unfair about placing ATMs

8

in places where the public may find them useful." (Deft. Br. at 9.)  But these arguments entirely miss the mark.  FCTI provides **no justification** for how or why customers are apparently double-billed for single inquiry transactions, and provides **no response** to Plaintiff's allegations that FCTI's series of screen prompts mislead consumers into conducting balance inquiries. Accordingly, Plaintiff has adequately alleged a UCL claim under the "unfair" prong.

### 2.  Plaintiff Asserts a Claim Under the "Fraudulent" Prong

Under the "fraudulent" prong of the UCL, conduct is considered deceptive or misleading if it is "likely to deceive" a "reasonable consumer." *Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008).  Importantly, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Id.*

Plaintiff sufficiently alleges that FCTI's deceptive screen prompts at its ATM machines amount to "fraudulent" conduct under the UCL because: (1) the manner in which the screen prompts are presented to consumers misleads them into performing balance inquiry transactions that they might not have otherwise engaged in, and (2) FCTI inexplicably causes customers to be double-billed for the same purported balance inquiry transaction.  (FAC ¶¶ 165–195, 318–319.)  To support these allegations, the FAC includes pages of screenshots that demonstrate how and why a reasonable consumer is likely to be misled into conducting a balance inquiry during a cash withdrawal transaction.  (*Id.* p. 34–42.)

Defendant's citation to Regulation E and the Electronic Funds Transfer Act ("EFTA") is a red herring.  (Deft. Br. at 10.)  Indeed, 12 C.F.R. 1005.16(b) requires an ATM operator to notify the consumer if **the ATM operator** is imposing a balance inquiry fee; but Plaintiff isn't challenging this practice.  Moreover, Plaintiff isn't challenging FCTI's right to collect an interchange fee from Wells Fargo for each balance inquiry conducted at its ATM machines.  Instead, the crux of the FAC is that FCTI misleads consumers as to **when** they are actually conducting a balance inquiry and provides

9

misinformation to Wells Fargo as to the actual number of balance inquiry transactions the consumer conducted.  (FAC ¶ 193.)  Neither Regulation E, nor the EFTA authorize the deceptive conduct that Plaintiff Hartman alleges.

Again, the incentive for FCTI to engage in this misleading business practice is substantial, and Plaintiff clearly alleges that FCTI has a mutually beneficial agreement with Wells Fargo regarding such scheme. (*Id.* ¶¶ 165–168, 193, 318, 339 ("FCTI has wrongfully collected interchange fees from Wells Fargo through their wrongful double-charging practice associated with out-of-network balance inquiries at their ATM machines.").

Thus, Plaintiff also states a claim under the "fraudulent" prong of the UCL.

**D.  Plaintiff Adequately States a Claim for Conversion**

Plaintiff has sufficiently stated a claim for conversion against FCTI.  Under California law, the "elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. . . ."  *Welco Electronics, Inc. v. Mora,* 223 Cal. App. 4th 202, 208 (2014) (internal citations and quotation marks omitted). "Conversion is a strict liability tort . . . The basis of a conversion action rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.  Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action." *Id.*  Moreover, "[m]oney may be the subject of the conversion if the claim involves a specific, identifiable sum; *it is not necessary that each coin or bill be earmarked*." *Id.* at 209 (emphasis added).

It appears FCTI only disputes Plaintiff's ability to plead the second element of the conversion claim as it flatly contends, without any supporting authority, that because it was Wells Fargo and not FCTI who charged Plaintiff Hartman for the balance inquiry transactions, no claim for conversion can stand against FCTI.  (*See* Deft. Br. at 10–11.) However, because the wrongful dispossession of Plaintiff Hartman's money is directly traceable to FCTI's deceptive conduct, liability must attach to FCTI. *See Welco Electronics, Inc.,* 223 Cal. App. 4th at 217 ("[A] defendant's acceptance of money to be

paid to another is but one example of a conversion claim."); *see also Olenicoff v. UBS AG,* No. SACV 08-1029 AG (RNBx), 2010 WL 8530286, at *32 (C.D. Cal. Mar. 16, 2010) (finding plaintiffs' allegations that one defendant participated as a co-conspirator in the scheme to transfer plaintiffs' funds to the other defendant was sufficient to form the basis of a conversion claim).

Plaintiff's allegations establishing conversion against FCTI are clear. The subject of the conversion involves specific, identifiable sums of money in the form of out-of-network balance inquiry fees (FAC ¶ 244).  FCTI ***directly caused*** these sums to be converted through a wrongful act, namely, by utilizing deceptive screen prompts at its ATM machines to lure customers into conducting balance inquiry transactions and causing them to be double-billed for the same, and received a portion of these sums in the form of interchange fees.  (*Id.* ¶¶ 165–195, 336–348). Lastly, FCTI's conversion of these sums resulted in financial damage to customers in that they incurred double the amount of out-of-network balance inquiry fees than otherwise expected.  (*Id.*)

Accordingly, Plaintiff has adequately stated a claim for conversion against FCTI.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Defendant FCTI, Inc.'s motion to dismiss be denied in its entirety[2].

Date: October 23, 2018                     Respectfully submitted,

                                     */s/ Todd D. Carpenter*
                                     **CARLSON LYNCH SWEET**
                                     **KILPELA & CARPENTER, LLP**
                                     Todd D. Carpenter (CA 234464)

---

[2] Leave to amend is liberally granted.  *Forman v. Davis,* 371 U.S. 178, 182 (1962); *Chodos v. West Pub. Co.,* 292 F.3d 992, 1003 (9th Cir. 2002). Importantly, in the event the Court decides to "grant[ ] [the] motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if not request to amend the pleading was made, unless amendment would be futile." *In re iPhone 4S Consumer Litigation,* No. C12-1127 CW, 2013 WL 3829653, at *5 (N.D. Cal. July 23, 2013), citing *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.,* 911 F.2d 242, 246–47 (9th Cir. 1990).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

tcarpenter@carlsonlynch.com
Brittany C. Casola (CA 306561)
bcasola@carlsonlynch.com
1350 Columbia St. Ste. 603
San Diego, California 92101
Tel: (619) 762-1900

Jeffrey D. Kaliel (CA 238293)
jkaliel@kalielpllc.com
Sophia Gold (CA 307971)
sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
Tel: (202) 350-4783

*Attorneys for Plaintiffs and the Class*