BENJAMIN T. MORTON (SBN: 199158)
bmorton@grsm.com
SHELBY A. POTEET (SBN: 297621)
spoteet@grsm.com
GORDON REES SCULLY MANSUKHANI
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7755
Facsimile: (619) 696-7124

Attorneys for Defendant FCTI, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN LOTSOFF and ASHLEIGH HARTMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., FCTI, INC., and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 3:18-cv-02033-AJB-MDD<br><br>CLASS ACTION<br><br>**FCTI, INC.'S REPLY TO OPPOSITION IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: January 10, 2019<br>Time: 2:00 p.m.<br>District Judge:<br>Hon. Anthony J. Battaglia<br>Courtroom: 4A |

Plaintiff Ashleigh Hartman's ("Plaintiff" or "Hartman") Opposition argues, without support, that FCTI, Inc.'s receipt of an interchange fee for a balance inquiry is actionable because the fee assessed to her by Wells Fargo is then partially passed on to FCTI. (Opposition 1:11-12).  Hartman also argues that FCTI "fails to inform consumers that they will be charged a fee for these balance inquiries." (*Id*. at 7-9).  Hartman fails to admit that Wells Fargo discloses the fees that it will assess for this service and that FCTI is not required to disclose that it will receive an interchange fee.  (FAC, Exhibit "B", p. 38).  Finally, in what is best characterized as an outright misstatement of fact, Hartman argues but does not allege that FCTI "double bills consumers for a single balance inquiry transactions". (*Id*. at 9-10).  As acknowledged by Hartman in her First-Amended Complaint ("FAC"), the only fee assessed to a cardholder by FCTI is the surcharge fee for the use of its ATM.  (FAC ¶ 111).  The fact that she agreed to pay Wells Fargo a separate fee for ATM transactions is a matter solely between her and her bank.

### I. HARTMAN RELIES UPON INAPPLICABLE CASE LAW AND THEORIES OF LIABILITY TO SUGGEST SHE HAS BROAD STANDING TO SUE FCTI.[1]

Hartman claims that the payment of fees to Wells Fargo gives her standing to sue FCTI for its receipt of the interchange fee.  She cites *Bates vs. United Parcel Services, Inc.*, 511 F.3d 974 (9th Cir. 2007) for the proposition that she only need to have suffered an injury in fact that is fairly traceable to the challenged conduct and that the injury is likely to be redressed by a favorable decision.  *Id*. at 985.  Here the harm is Hartman's payment of a fee to her bank that is not traceable to FCTI but rather occurred as a result of Harman's agreement with Wells Fargo.  Further, any decision issued against FCTI will not impact or change her agreement with Wells Fargo.  It will have no affect at all on that agreement.

---

[1] FCTI's Motion was brought under Federal Rules of Civil Procedure 12(b)(6).  It's challenge to standing is more appropriately brought under Rule 12(b)(1).  FCTI respectfully requests the Court consider its challenge to Plaintiff's standing as being brought under 12(b)(1) for lack of subject matter jurisdiction.

- 1 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 18-cv-02033

In *Bates* a class of plaintiffs sued their employer, United Parcel Service ("UPS"), challenging UPS's practice of requiring a hearing test on prospective drivers. In connection with its standing analysis the 9th Circuit only considered whether the plaintiffs had standing for equitable relief not damages. The *Bates* Court analysis is reflective of why Hartman does not have standing to seek her own injunctive relief.

To establish standing for injunctive relief, "(t)he plaintiff must demonstrate that he has suffered or is threatened with a "concrete and particularized" legal harm…coupled with "a sufficient likelihood that (s)he will again be wronged in a similar way. As to the second inquiry, (s)he must establish a "real and immediate threat of repeated injury. Past wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." (internal citations omitted). *Id*. at 985-986.  Here Hartman cannot establish standing for injunctive relief because there is no threat of future harm. Unlike the named plaintiff in *Bates* who will continue to be exposed to the hearing test if they seek driving positions with UPS, Hartman will not be charged fees by Wells Fargo for balance inquiries because she knows now not request the inquiry. More compellingly, any injunction against FCTI would not reduce the risk of future harm because the only harm the Plaintiff suffered is the payment of fees to Wells Fargo. No injunctive relief against FCTI will alter the terms of the agreement that Hartman entered with her bank.

Hartman suggests that any injury, regardless of who caused the injury, can be assessed against FCTI because its operating system is allegedly confusing or misleading. (Opp. 4:20-22). Harman's argument ignores the causation requirement between the complained of conduct and the actual harm caused. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560 (1992)- "the irreducible constitutional minimum of standing" requires:  1) injury in fact; 2) causal connection between the injury and the conduct complained of; and 3) likely that

- 2 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS

Case No. 18-cv-02033

the injury will be redressed by a favorable decision. But for the imposition of fees by Wells Fargo, FCTI's operating system is merely an inconvenience for Hartman. Plaintiff analogizes this case to product liability actions wherein all the players in the chain of commerce are potentially liable for product defects.  This analogy falls short because product liability actions have been enforced under the doctrine of strict liability and have been treated differently from a causation perspective due to policy considerations of ensuring only safe and reliable products are introduced to the market.[2]  (Opp. 5:3-7).  Product liability theories have no application to this case.

Hartman relies upon *Thieser-Hendricks v. TJL Enterprises, Inc.*, No. LACV1500477JAKSSX, 2015 U.S. Dist. LEXIS 101710 (C.D. Cal. 2015) in support of her contention that her alleged harm is "fairly traceable" to the conduct of FCTI.  The standing issue in *Thieser-Hendricks* involved a claim for injunctive relief related to product labeling of homeopathic remedies.  The plaintiff sued the maker of the various remedies that she contended were ineffective.  The Court deferred deciding whether injunctive relief was appropriate and indicated it would be decided at a later time. *Id*. at *27.  In *Thieser-Hendricks* plaintiff was seeking recovery from the maker of the product that she claimed was not as advertised.  It is their product that plaintiff contends she wasted her money buying and using. *Thieser-Hendricks* has no application here because Hartman has not alleged that she paid any fees to FCTI other than the surcharge fee for the use of the ATM machine, which is not at issue.  FAC ¶ 111.  Her balance inquiry fee, which is the

---

[2] "Early on, California decided to impose strict products liability on manufacturers and others in the chain of commerce, regardless of their proximity to the injured plaintiff, of moral blame, and of the other traditional negligence considerations mentioned above. The courts reasoned that the costs of compensation could more equitably be borne by the commercial classes than the injured plaintiffs. *See, e.g., Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 262-63, 37 Cal. Rptr. 896, 391 P.2d 168 (1964) (holding that a manufacturer's and a retailer's liability should be imposed irrespective of fault); *Greenman v. Yuba Power Prods. Inc.*, 59 Cal.2d 57, 63-64, 27 Cal. Rptr. 697, 377 P.2d 897 (1963) (holding a manufacturer's liability should be imposed irrespective of fault)." *Ileto v. Glock Inc.*, 370 F.3d 860, 864, fn. 3 (9th Cir. 2004).

- 3 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 18-cv-02033

Gordon Rees Scully Mansukhani
101 W. Broadway Suite 2000
San Diego, CA 92101

fee she contends should not have been charged, was paid to Wells Fargo pursuant to her agreement with it.

Hartman also relies upon *Hahn v. Massage Envy Franchising LLC*, No. 12CV153 DMS (BGS), 2013 U.S. Dist. LEXIS 202156 (S.D. Cal. 2013) for the proposition that she only needs to show a "line of causation" between FCTI's actions and her alleged harm to establish causation for purpose of standing. The franchisor defendant in *Hahn* contended it was the franchisee's conduct that was actionable not its own. The Court found the franchisor could be liable to the plaintiff given the "breadth of Defendant's alleged control over the local franchise's day-to-day operations." *Id*. at * 15. Here there is no relationship between Wells Fargo and FCTI. FCTI is an independent ATM operator and there are no allegations that it coordinated its ATM operations with any financial institution. Again, but for the imposition of a transaction fee that Plaintiff agreed to with Wells Fargo, the screen prompts that Hartman complains of are nothing more than a nuisance to her.

Finally, Hartman cites *Woodard v. Labrada*, No. EDCV1600189JGBPX, 2017 U.S. Dist. LEXIS 124546 (July 31, 2017, C.D. Cal.) for the proposition that "Courts have embraced common law doctrines of secondary liability to hold any person part of a common scheme to engage in unfair business practices liable." *Id*. at *1.) However, Plaintiff has not alleged that FCTI is secondarily liable for the alleged wrongful imposition of transaction fees by Wells Fargo. She challenges FCTI's receipt of interchange fees, which are not paid by the cardholder. FAC ¶ 113. Further, *Woodard* involved allegations of a "joint venture" between weight loss product manufacturers, distributors and a television show, "Dr. Oz", that promoted the product. The *Woodard* Court correctly noted that courts have held defendants liable under the UCL on agency principles, on theories of aiding and abetting, furnishing the means, and civil conspiracy. *Id*. at *36.). No such allegations exist here. In fact, the FAC does not even use the words "aiding and

- 4 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS

Case No. 18-cv-02033

abetting, agent, agency or conspiracy." There is nothing to suggest that Wells Fargo and FCTI acted in concert in connection with the imposition of fees upon Hartman. To the contrary, Plaintiff contends that Wells Fargo should be blamed for allowing FCTI to determine how to operate its ATMs. FAC ¶ 318.

### 1. Courts Have Held that Cardholders Lack Standing to Bring Consumer Claims Arising from ATM Operators Receipt of Interchange Fees.

Cardholders standing to sue ATM operators who receive an interchange fee has been previously considered in the context of an antitrust class action. *In re ATM Fee Antitrust Litig.*, No. C 04-02676 CRB, 2010 U.S. Dist. LEXIS 97009 (N.D. Cal., September 16, 2010) concerned the payment of interchange fees which plaintiffs alleged resulted in higher fees from their banks for the use of foreign or out of network ATMs. "The interchange fee, though paid by a card-issuing bank to an ATM owner, is established by the ATM Network that routes the foreign ATM transaction between the card-issuing bank and the ATM owner." *Id.*, at *13. Plaintiffs sought "damages in the amount of the unlawful interchange fee that their respective banks have passed through to them in the form of foreign ATM fees." *Id* at *18. Applying the direct purchaser rule the Court noted that "Plaintiffs do not dispute that they pay the purportedly unlawful interchange fee only indirectly. ATM card-issuing banks, such as the bank Defendants, pay the artificially inflated interchange fee directly and then, at least according to Plaintiffs, pass some portion of it on to the Plaintiffs as part of the foreign ATM fee Plaintiffs pay." *Id*. at *22. The Court, in granting defendant banks' motions for summary judgment, found that Plaintiffs lacked the requisite standing to challenge the interchange fees because they were not directly paying them. This holding was affirmed on appeal to the 9th Circuit. See, *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.)* 686 F.3d 741 (9th Cir. 2012).

/ / /

- 5 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS

Case No. 18-cv-02033

## II. HARTMAN'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED AS TO FCTI.

Hartman contends she only brings a breach of contract claim against Wells Fargo and not FCTI. (Opp. 6:1-3). While FCTI appreciates this concession, the claim should be dismissed as to FCTI because it is pleaded against FCTI. (*See* FAC, Second Cause of Action for Breach of Contract Including Covenant of Good Faith and Fair Dealing "On behalf of the OON Class and FCTI ATM Class.")

## III. HARTMAN HAS NOT PLED A VALID UCL CLAIM.

Hartman again relies upon *Woodard* in support of her contention that she has alleged a valid UCL Claim. On the one hand Hartman seems to suggest that any conduct is actionable under the UCL regardless if that conduct is actually harming the plaintiff. On the other hand Hartman relies upon *Woodard* to argue that "courts have held defendants liable under the UCL on agency principles, on theories of aiding and abetting, furnishing the means, and civil conspiracy." Opp. 6:18-20. However, as stated above, the FAC is bare of any allegations related to any relationship between FCTI and Wells Fargo. In fact, the FAC alleges that "Wells Fargo's practice of blindly permitting FCTI to determine for them how and when an out-of-network ATM transaction has occurred and then subsequently collecting double the amount of out-of-network balance inquiry fees that they would otherwise be entitled to constitutes a fraudulent business practice". Opp. 63:5-8. Thus, Plaintiff admits that there is no concerted conduct on the part of the two defendants in this case. Rather, the opposite is true.

### 1. There is Nothing Unfair, Unlawful or Fraudulent About FCTI's ATM Prompts.

Hartman admits that there is nothing unlawful about FCTI's ATM prompts and brings her UCL claims solely under the unfair and fraudulent prongs of the statute. Opp. 6:22-23. Hartman claims that FCTI's ATM prompts are "unfair"

- 6 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 18-cv-02033

because they mislead the "consumer" into unnecessary balance inquiries for which Wells Fargo charges them. Opp. 7:24-25. She claims she has satisfied both the "tethering" and "balancing tests" under the UCL that have been applied to "consumer actions." Opp. 7:24-26- Relying upon *Hadley vs. Kellog Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017). Hartman's reliance upon these consumer class action tests is misplaced as she has not limited her class allegations to consumer transactions. Rather, she seeks a class of "all holders of a checking account in California" who were assessed fees for a balance inquiry. FAC ¶ 245, 52:15-17. To suggest that this putative class action is limited solely to consumer transactions is not consistent with the FAC's allegations. Self-evidently, people hold checking accounts and use ATMs for business purposes frequently. Whether these are intended to be excluded from the class definition is not clear from the FAC but seems to be Harman's position now.

Assuming, arguendo, the tethering and balancing tests do apply, Hartman fails to show how the screen prompts are "immoral, unethical, oppressive, or unscrupulous." Opp. 7:22-23. In this case, Hartman contends they are all of these things because the "balance inquiry at start" results in a transaction fee by her bank Wells Fargo. She admits it results in no fee by FCTI. For it to qualify as any of these egregious forms of conduct, FCTI would have to be aware that it is causing harm to the cardholder. No such allegations exist and this reality begs the question as to whether Plaintiff would have any claim if her bank did not charge transaction fees for each balance inquiry. Of course, she would not as she would have suffered nothing more than inconvenience arising from her confusion about how to negotiate the ATM prompts.

Hartman also fails to show how the burden of the ATM prompts outweigh the benefits. The benefit of a balance inquiry prompt is to allow the cardholder to determine the amount of money available to her before seeking a cash withdrawal. The burden is that in the case of Hartman she was charged a fee for this service by

- 7 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS

Case No. 18-cv-02033

1  Wells Fargo.  This is a self-imposed burden that Hartman agreed to when she
2  selected her bank.  The existence of the fee has nothing to do with FCTI's ATM
3  protocol.
4       Finally, Hartman's unfair prong of the UCL cannot stand alone if her
5  fraudulent prong cannot survive.  "Regardless of the test, courts in this district have
6  held that where the unfair business practices alleged under the unfair prong of the
7  UCL overlap entirely with the business practices addressed in the fraudulent and
8  unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the
9  claims under the other two prongs of the UCL do not survive." *Handley, supra,* at
10 1104-1105.  Hartman admits that there is nothing unlawful about FCTI's conduct.
11 So, FCTI now turns to the fraudulent prong, where Hartman again fails to allege a
12 valid claim.

      (a)   *HARTMAN's bald Allegations of Fraud are Insufficient to Support Her Fraud Claim Under the UCL*.

15      To state a claim under the UCL's "fraudulent" prong, Hartman must plead
16 that FCTI's allegedly fraudulent business practice is one in which "members of the
17 public are likely to be deceived." *Obesity Research, supra, at 952.*  "Unless the
18 challenged conduct targets a particular disadvantaged or vulnerable group, it is
19 judged by the effect it would have on a reasonable consumer." *Id*. citing *Puentes v.
20 Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 645 (2008) (quotations and
21 citation omitted).
22      Further, Federal Rules of Civil Procedure, Rule 9(b), requires that Hartman
23 plead the alleged fraudulent conduct with particularity.   While Hartman spends
24 considerable time detailing the ATM prompts of non-party Cardtronics (see, FAC
25 ¶¶ 136-164) and FCTI (see, FAC ¶¶ 165-195), she fails to allege facts sufficient to
26 establish facts necessary to support a fraud claim.  She never details the "who,
27 what, when, where and how" of the alleged scheme.  She only makes the
28 unsupported allegation that FCTI is communicating "phantom balance inquiries" to

- 8 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 18-cv-02033

*Gordon Rees Scully Mansukhani*
*101 W. Broadway Suite 2000*
*San Diego, CA 92101*

Wells Fargo but fails to explain how it is doing so for what benefit? It does not assess fees for balance inquiries, Wells Fargo does pursuant to its agreement with its customers.

Finally, as stated above, in order to establish that FCTI's conduct is fraudulent or meant to deceive Hartman she would have to establish that FCTI knew of the terms of Hartman's agreement with Wells Fargo. She, of course, does not allege there was any understanding of those terms or any concerted action between the defendants. Again, but for the imposition of a fee by Wells Fargo there is nothing about the ATM protocol that would have allegedly harmed Hartman. Cardholder's financial institutions inevitably have varying rules on the imposition of out of network fees. There can be no uniform claim that FCTI's ATMs employ deceitful prompts because every transaction is unique depending on whether the cardholder's financial institution assesses fees for those services.

Because Hartman has not and cannot allege and unfair or fraudulent conduct on the part of FCTI, her UCL claim is properly dismissed.

### IV. HARTMAN FAILS TO SHOW HOW FCTI CAN BE LIABLE FOR THE CONVERSION OF HER MONEY IN THE FORM OF FEES BEING ASSESSED BY WELLS FARGO.

Hartman contends it is not necessary that the plaintiff allege that a defendant actually received the money that was converted to bring a claim for conversion. Opp. 10:10-11:14. She cites *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202 (2012) for the proposition that the lost sum only be "specific" and "identifiable" and that "it is not necessary that each coin or bill be earmarked." Opp. 10: 20-21. Hartman misses the point in *Welco*. The issue is not whether the exact dollars that she pays can be returned to her, but whether FCTI can be required to return something it never received. In *Welco* the defendant, an agent/employee of Plaintiff misappropriated its credit card and made charges for his own benefit. In short he used the credit card to pay himself. FCTI has received nothing from Hartman other than her fee for the use of the ATM.

Similarly, in *Olenicoff v. UBS AG,* NO. SACV 08-1029 AG (RNBx), 2010 U.S. Dist. LEXIS 144474 (C.D. Cal., March 16, 2010) a collection of defendants were all sued by a wealthy investor in connection with an investment scheme whereby the defendants conspired to misappropriate plaintiff's investment funds in the form of improper fees and kickbacks. Unlike here, these defendants were alleged to have entered into a joint conspiracy and were diverting plaintiff's actual money. *Id*. at *77-78. Again, this case is completely inapplicable to Hartman's claims.

Unlike Hartman's cited cases, FCTI never had control, access or the opportunity to convert Hartman's money. Here, the fees incurred by her were assessed by her bank, Wells Fargo, and were drawn directly from the account that she had with Wells Fargo. FCTI had no access to or control over Plaintiff's funds and did not receive anything from Plaintiff for her balance inquiries. Accordingly, the conversion claim is properly dismissed.

### V.  CONCLUSION

FCTI's motion should be granted. The interchange fees are not actionable and her UCL, breach of contract and conversion claims must fail. Further, the Plaintiff has not demonstrated how amendment can cure the defects in her claims. Thus, leave of amend is not appropriate.

Dated: October 30, 2018             GORDON REES SCULLY MANSUKHANI

By: */s/ Benjamin T. Morton*
Benjamin T. Morton
Shelby A. Poteet
Attorneys for Defendant FCTI, INC.

- 10 -
FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 18-cv-02033

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon Rees Scully Mansukhani 101 W. Broadway, Suite 2000, San Diego, CA 92101, my electronic mail address is mcerezo@grsm.com.  On October 30, 2018, I served the foregoing document entitled: **FCTI'S REPLY IN SUPPORT OF MOTION TO DISMISS** as follows:

☒ **BY ELECTRONIC SERVICE THROUGH THE CM/ECF SYSTEM** which automatically generates a Notice of Electronic Filing at the time said document is filed to the email address(es) listed in the Electronic Mail Notice List and denoted below, which constitutes service pursuant to FRCP 5(b)(3).

**Counsel for Plaintiffs:**

Todd D. Carpenter
CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP
1350 Columbia Street, Suite 603
San Diego, CA 92101
Phone: 619-762-1910
Fax: 619-756-6991
Email: tcarpenter@carlsonlynch.com

**Counsel for Defendant WELLS FARGO BANK, N.A.:**

Alejandro E. Moreno
Edward D. Vogel
SHEPPARD, MULLIN, RITCHER & HAMPTON, LLP
501 West Broadway, 19th Floor
San Diego, CA 92101
Phone: 619-338-6500
Fax: 619-234-3815
Email: amoreno@sheppardmullin.com
         evogel@sheppardmullin.com

**Counsel for Defendant FCTI, INC.**

Scott Lam
FCTI, INC.
11766 Wilshire Blvd., Suite 1100
Los Angeles, CA 90025
Phone: 310-402-0646
Email: joliver@moginrubin.com

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 30, 2018 at San Diego, California.

_____
Maria G. Cerezo