Todd D. Carpenter (CA Bar No. 234464)
tcarpenter@carlsonlynch.com
(Eddie Kim) Jae K. Kim (CA Bar No. 236805)
ekim@carlsonlynch.com
Scott G. Braden (CA Bar No. 305051)
sbraden@carlsonlynch.com
**CARLSON LYNCH, LLP**
1350 Columbia St. Ste. 603
San Diego, CA 92101
Tel: (619) 762-1900
Fax: (619) 756-6991

Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Gold (CA Bar No. 307971)
sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
Tel: (202) 350-4783

*Attorneys for Plaintiffs Helen Lotsoff, Ashleigh Hartman and the Class*

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN LOTSOFF and ASHLEIGH HARTMAN, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>    v.<br><br>WELLS FARGO BANK, N.A., FCTI, INC. and DOES 1-50, inclusive,<br><br>        Defendants. | Case No.: 3:18-cv-2033-AJB-MDD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL**<br><br>Date: January 30, 2020<br>Time: 2:00 p.m.<br>Courtroom 4A, Suite<br><br>Honorable Anthony J. Battaglia<br><br>Original Complaint filed: May 29, 2018<br>Removed: August 30, 2018 |

# TABLE OF CONTENTS

I.    INTRODUCTION… ...................................................................................1

II.   RELEVANT PROCEDURAL BACKGROUND ....................................................2

III.  LEGAL STANDARD ...............................................................................3

IV.   ARGUMENT…................................................................................ 6

    A. Following Ninth Circuit Precedent in *Blair*, Defendant Has No Probability of Success on Appeal ........................................................ 6

    B.  Defendant's Appeal Presents No Substantial Legal Question ...........................11

        1.  Plaintiffs Properly Seek Public Injunctive  Relief ....................................11

        2.  In the Wake of Blair There is No Split in Authority................................ 16

        3.  Application of the "Poison Pill" Pill Provision........................................ 16

    C. Stay is Not Warranted Because the Balance of Hardships Do Not "Tip Sharply" in Wells Fargo's Favor ........................................................ 18

        1.  Defendant's Potential Hardship is Minimal and Does Not Justify A Stay …...18

        2. The Harm Plaintiff's and the Classes Would Suffer If a Stay Is Granted Is Greater Than The Harm Defendant Would Suffer ................. 22

    D.  The Public Interest Does Not Support A Decision to Stay ........................... 23

        1.  Judicial Resources .................................................................. 24

        2.  Enjoining the Fraudulent Activity................................................ 24

    E. Any Doubts Regarding the Propriety of Granting A Stay Should be Resolved in the Denial of the Motion Without Prejudice ...................................25

V.    CONCLUSION …..................................................................…...25

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

Case No.:  3:18-cv-2033-AJB-MDD

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alascom, Inc. v. ITT North Electric Co.*,
  727 F.2d 1419 (9th Cir. 1984) ........................................................................19

*Blair v. Rent-A-Ctr., Inc.*,
  928 F.3d 819 (9th Cir. 2019) ................................................................... Passim

*Blair v. Rent-A-Ctr., Inc.*, No. C,
  2017 WL 4805577 (N.D. Cal. Oct. 25, 2017) ..........................................6, 13

*Bradberry v. T-Mobile USA, Inc.*,
  2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) ......................................... Passim

*Britton v. Co-Op Banking Group.*,
  916 F.2d 1405 (9th Cir. 1990) ....................................................................3, 4, 19

*C.B.S. Employees Federal Credit Union v. Donaldson*,
  716 F. Supp. 307 (W.D. Tenn. 1989) ..............................................................3, 4

*Council, Inc. v. Winter*,
  502 F.3d 859 (9th Cir. 2007) ..............................................................................5

*Delisle v. Speedy Cash*,
  2019 WL 2423090 (S.D. Cal. June 10, 2019) ................................................13

*Dunham v. Entl. Chem. Corp.*,
  2007 U.S. Dist. LEXIS 3092 (N.D. Cal., Jan 4, 2007)...................................19

*Eberle v. Smith*,
  2008 WL 238450 (S.D. Cal. Jan. 29, 2008) ...................................................20

*Ferguson v. Corinthian Colleges*,
  2012 WL 27622 (C.D. Cal. Jan. 5, 2012)........................................................10

*Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
  2016 WL 9226389 (D. Or. Oct. 5, 2016) .......................................................19

*Golden Gate Restaurant Ass'n. v. City and County of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ................................................................5

*Gray v. Conseco, Inc*.,
    2000 WL 1480273 (E.D. Cal. Sept. 29, 2000) ...................................21

*Guifu Li v. A Perfect Franchise, Inc.*,
    2011 WL 2293221 (N.D. Cal. June 8, 2011).......................................18

*Hilton v. Braunskill*,
    481 U.S. 770 (1987).................................................................................5

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
    2014 WL 2922726 (N.D. Cal. June 13, 2014)......................................18

*Johnson v. JP Morgan Chase Bank, N.A.*,
    2018 WL 4726042 (C.D. Cal. Sept. 18, 2018).....................................13

*Lopez v. Heckler*,
    713 F.2d 1432 (9th Cir. 1983) .........................................................5, 18, 23

*McArdle v. AT&T Mobility LLC*,
    772 F. App'x 575 (9th Cir. 2019) .........................................................6

*McArdle v. AT&T Mobility LLC*,
    2017 WL 4354998 (N.D. Cal. Oct. 2, 2017) ..........................8, 17, 19, 20

*McGovern v. U.S. Bank N.A.*,
    362 F. Supp. 3d 850 (S.D. Cal. 2019) ...........................................13, 14

*Mohamed v. Uber Techs., et al*,
    115 F. Supp. 3d 1024 (N.D. Cal. 2015)...............................................11

*Morse v. Servicemaster Glob. Holdings, Inc.*,
    2013 WL 123610 (N.D. Cal. Jan. 8, 2013)........................................5, 18

*Moses H. Cone Memorial Hospital v. Mercury Construction*,
    460 U.S. 1 (1983)...............................................................................3, 4, 6

*Murphy v. DirecTV, Inc.*,
    2008 WL 8608808 (C.D. Cal. July 1, 2008) .......................................20

*Pearce v. E.F. Hutton Group, Inc.*,
  828 F.2d 826 (D.C. Cir. 1987)................................................................3, 4

*Pearson v. P.F. Chang's China Bistro, Inc.*,
  2015 WL 12910914 (S.D. Cal. Feb. 23, 2015)....................................2

*Ramirez v. Cintas Corp.*,
  2005 WL 2894628 (N.D. Cal. Nov. 2, 2005) ....................................21

*Richards v. Ernst & Young LLP*,
  2012 WL 92738 (N.D. Cal. Jan. 11, 2012)........................................20

*Roberts v. AT&T Mobility LLC*,
  2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) .............................8, 19

*Steiner v. Apple Computer, Inc.*,
  2008 WL 1925197, (N.D. Cal. 2008) .....................................4, 20, 21

*Stiner v. Brookdale Senior Living, Inc.*,
  383 F. Supp. 3d 949 (N.D. Cal. 2019)................................................8

*Tillage v. Comcast Corp.*,
  772 F. App'x 569 (9th Cir. 2019) .................................................6, 7

*Toyo Tire Holdings v. Continental Tire North*,
  609 F.3d 975 (9th Cir.2010) ............................................................10

*U.S. Fidelity & Guar. Co. v. Helm*,
  84 F.2d 546 (9th Cir. 1934) ............................................................23

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
  2018 WL 6074573 (C.D. Cal. Mar. 8, 2018) ...................................20

*Ward v. Estate of Goossen*,
  2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ....................................8

*Zaborowski v. MHN Gov't Servs., Inc.*,
  2013 WL 1832638 (N.D. Cal. May 1, 2013).....................................19

**State Cases**

*Broughton v. Cigna Healthplans of California*,
    21 Cal.4th 1066 (1999) ....................................................................................17, 21

*Clifford v. Quest Software Inc.*,
    38 Cal. App. 5th 745 (Ct. App. 2019) .............................................................14

*Coast Plaza Doctors Hospital v. Blue Cross of California*,
    83 Cal. App. 4th 677 (2000) .............................................................................21

*Compton v. Super. Ct.*,
    154 Cal. Rptr. 3d 413 (Ct. App.) .....................................................................10

*Cruz v. Pacificare Health Sys., Inc.*,
    30 Cal. 4th 303 (2003) ......................................................................................21

*Groom v. Health Net*,
    82 Cal. App. 4th 1189 (2000) ...........................................................................21

*In re Tobacco Cases I*,
    124 Cal. App. 4th 1095 (2004) ...........................................................................8

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*,
    173 Cal.App.4th 1040 (2009) ...........................................................................10

*McGill v. Citibank, N.A.*,
    393 P.3d 85 (Cal. 2017) ............................................................................ Passim

**State Statutes**

Cal. Bus. & Prof. Code § 17203 ...............................................................13, 14

Cal. Bus. & Prof. Code § 17200 ...............................................................12, 13

Cal. Civil Code § 1782.................................................................................13, 14

Cal. Civil Code § 3513.......................................................................................12

Cal. Civ. Proc. Code ("CCP") § 1281.8.........................................................9, 10

Cal. Const., art. XV, § 1..................................................................................13

**Federal Rules**

Federal Rule of Civil Procedure 62 ........................................................................5

Plaintiffs Helen Lotsoff and Ashleigh Hartman ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this Opposition to Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo" or "Defendant") Motion to Stay ("Motion") this action pending appeal of the trial court's denial of Wells Fargo's motion to compel arbitration.

## I.   INTRODUCTION

Wells Fargo  lost its bid to compel arbitration of Plaintiffs' claims when this Court correctly held that Wells Fargo's Arbitration Agreement was unenforceable because it barred public injunctive relief in any forum and therefore violated the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) ("*McGill*"). Dkt. No. 37 at 7-8.  Further, the Court correctly held that the Arbitration Agreement's "poison pill" *unambiguously* rendered the entirety of the arbitration provision unenforceable. *Id.* at 9.  Wells Fargo recently appealed this Court's denial of its motion to compel arbitration and now seeks to stay the entire case. A stay is unwarranted. A stay would permit Wells Fargo to circumvent the resolution of Plaintiff's claims and continue its illegal, systematic practice of charging overdraft ("OD") fees on "Authorize Positive Purportedly Settle Negative Transactions"; charging both a non-sufficient fund ("NSF") fee and an OD fee on a single transaction; and assessing fraudulent out-of-network ("OON") ATM fees on out-of-network ATM withdrawals immediately preceded by a balance inquiry. Because Wells Fargo continues to engage in the challenged conduct, a stay would allow it to continue collecting these illegal fees from unsuspecting customers and acquire new customers under false pretenses.

The Court should exercise its discretion to deny the requested stay as Well Fargo's arguments fall far short of meeting the Ninth Circuit's requirements for issuance of a stay pending appeal of a denial of a motion to compel arbitration.  Defendant's Motion recycles the same arguments already rejected by this Court, the Ninth Circuit in *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019) ("*Blair*"), and the *Wallace*

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION
PENDING APPEAL
Case No.:  3:18-cv-2033-AJB-MDD

*Court*[1] where the exact arbitration agreement at issue here was similarly invalidated under *McGill*. Wells Fargo's arbitration provision allows Wells Fargo to compel ***any*** dispute to arbitration and then prohibits the arbitrator from awarding public injunctive relief. Because such an agreement is unenforceable under the controlling precedent, Wells Fargo has no likelihood of success.  Likewise, its appeal presents no substantial question of law with respect to whether Plaintiffs properly seek public injunctive relief or the application of the "poison pill" provision in the arbitration agreement. Additionally, any resulting hardship on it is minimal and significantly outweighed by that of Plaintiffs and the Class, and the interests of the general public. For the reasons set forth below, Plaintiffs respectfully urge the Court to deny Defendant's Motion.

## II. RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in this case on May 29, 2018 in the Superior Court for the State of California, County of San Diego, Case No. 37-2018-00026392-CU-CO-CTL. On July 13, 2018, Plaintiffs filed a First Amended Complaint ("FAC"). Wells Fargo removed this action to federal court on August 30, 2018.  Wells Fargo filed a Motion to Compel Arbitration on September 6, 2018.  On October 5, 2018, Plaintiffs filed a Motion for Leave to Amend the Complaint in view of Defendant's Motion to Compel Arbitration. The Second Amended Complaint sought to bolster Plaintiffs' allegations concerning the right to seek public injunctive relief, as relevant to Wells Fargo's Motion to Compel Arbitration.  The Motion to Compel Arbitration and Motion for Leave to Amend were subsequently all fully briefed.  On September 30, 2019, the Court issued an Order denying Wells Fargo's Motion to Compel Arbitration and

---

[1] *See Wallace v. Wells Fargo & Co.*, Case No. 2017-1-CV-317775 (Sup. Ct. Cal., Santa Clara, Aug. 7, 2018); Dkt. No. 15-1 (*Wallace* Order).  Although the Court declined to find *Wallace* preclusive in denying Defendant's motion to compel arbitration in light of *Pearson v. P.F. Chang's China Bistro, Inc.*, No. 13-CV-2009-JLS (MDD), 2015 WL 12910914, at *4 (S.D. Cal. Feb. 23, 2015), the fact a California Superior Court of competent jurisdiction found Defendant's exact arbitration agreement wholly unenforceable under *McGill* is telling of Defendant's unlikelihood of success on appeal. and should be appreciated here.

granting Plaintiffs' Motion for Leave to File an Amended Complaint. In light of the Court's Order denying Wells Fargo's Motion to Compel Arbitration under *McGill*, Plaintiffs elected not to amend the FAC at that time.  On October 25, 2019, Wells Fargo filed its notice of appeal (Dkt. No. 44) and on November 5, 2019, brought this Motion seeking to stay all trial court proceedings pending appeal of this Court order denying Defendant's motion to compel arbitration.

## III.   LEGAL STANDARD

The Ninth Circuit has held that a district court has discretion to grant a stay pending appeal of a denied petition to compel arbitration, reasoning that a mandatory stay:

> would allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration. The system created by the Federal Arbitration Act allows the district court to evaluate the merits of the movant's claim and if, for instance, the court finds that the motion presents a substantial question, to stay the proceedings pending an appeal from its refusal to compel arbitration.

*Britton v. Co-Op Banking Group*., 916 F.2d 1405, 1412 (9th Cir. 1990); *see, e.g., Pearce v. E.F. Hutton Group, Inc*., 828 F.2d 826, 829 (D.C. Cir. 1987) (district court, after denying appellant's motion to compel arbitration, granted its motion for a stay pending appeal because it found appellant's claim raised issues of first impression and that appellant would suffer substantial harm if the action were not stayed); *C.B.S. Employees Federal Credit Union v. Donaldson*, 716 F. Supp. 307 (W.D. Tenn. 1989) (developing test to determine whether district court should stay trial proceedings pending appeal from denial of motion to stay proceedings pending arbitration). This is a proper subject for the exercise of discretion by the trial court.  *Britton*, 916 F.2d at 1412 (emphasis added); *see also, Moses H. Cone Memorial Hospital v. Mercury Construction*, 460 U.S. 1, 21 (1983).  *Britton* refers to two cases which provide guidance as to how a trial court

should exercise discretion regarding whether to grant a stay pending appeal.  *Id*. at 1412.[2]

The first case cited in *Britton*, 916 F.2d at 1412, is *Pearce*, 828 F.2d at 829.  In *Pearce*, both defendants, Bell and Hutton, moved to compel arbitration.  The district court denied their motions and they appealed.  The D.C. Circuit affirmed the district court's decision to stay Hutton's trial because the denial of his motion to compel arbitration presented an issue of first impression and he would suffer substantial harm if he were forced to proceed with trial but his appeal was later successful.  *Id*.  On the other hand, the D.C. Circuit affirmed the district court's decision to deny Bell's motion to stay because it was "clear that there is no arbitration agreement between Plaintiff and Bell." *Id*.

*Pearce* stands for the proposition that when an appeal presents an issue of first impression, the trial court should grant a stay.  On the other hand, when an appeal is frivolous, as is the case when there is clearly no agreement to arbitrate, the trial court should not grant a stay.  Accordingly, courts generally have interpreted *Britton's* citation to *Pearce* as meaning that a stay *may* be warranted if the question on appeal presents an issue of first impression.  *See Bradberry v. T-Mobile USA, Inc.*, No. 06-6567 CW, 2007 WL 2221076 at *3 (N.D. Cal. Aug. 2, 2007); *Steiner v. Apple Computer, Inc*., No. 07-cv-04486 SBA, 2008 WL 1925197 *2, (N.D. Cal. 2008).  Wells Fargo's appeal here does not present an issue of first impression, nor does Wells Fargo argue as such.

The second case cited by *Britton* is *C.B.S. Employees Federal Credit Union*, 716 F.Supp. at 309.  In *CBS*, the court determined that a stay pending appeal of the denial of

---

[2] In *Britton*, the Court did not engage in any analysis of the factors discussed in *C.B.S.*, nor was there any discussion of what constituted a "substantial question."  Rather, the court simply cited to these cases in asserting that the decision to issue a stay is discretionary, and not mandated by the FAA.  The direct rationale given by *Britton* in upholding the district court's refusal to grant a stay was that "[t]he district court is directed to grant a stay only when it has determined that the issue is to be arbitrated.  In this case, the court explicitly found otherwise."  *Id*. at n.8.

a motion to compel arbitration falls under Federal Rule of Civil Procedure 62(c), and thus is subject to the four part test set out by the United States Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  The *Hilton* test balances: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Hilton*, 481 U.S. at 776.

Consistent with the *Hilton* factors, the Ninth Circuit has derived a standard that employs "two interrelated legal tests" that "represent the outer reaches of a single "continuum."  *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).  "At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury."  *Id.*  "At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor."  *Id.*; *see also Morse v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  *National Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007).  Additionally, a district court is to consider where the public interest lies separately from and in addition to whether the stay applicant will be irreparably injured absent a stay.  *Golden Gate Restaurant Ass'n. v. City and County of San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008).

Here, based on controlling precedent, Wells Fargo fails to show a likelihood of success on the merits and therefore, and faces no irreparable injury absent a stay, while Plaintiffs, the putative class, and the general public will continue to be harmed by Wells Fargo's ongoing deceptive and unlawful fee practice if a stay is granted.

//

///

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

## IV.    ARGUMENT

### A. FOLLOWING NINTH CIRCUIT PRECEDENT IN *BLAIR*, DEFENDANT HAS NO PROBABILITY OF SUCCESS ON APPEAL

Wells Fargo's prospects for a successful appeal start and end with the Ninth Circuit's opinion in *Blair,*, 928 F.3d 819, which affirmed the district court's partial denial of a motion to compel arbitration where the arbitration provision waived a party's right to seek public injunctive relief in any forum and therefore ran afoul of *McGill*, 393 P.3d 85. In so ruling, the Ninth Circuit held that *McGill* was not preempted by the Federal Arbitration Act ("FAA") and that the plaintiffs did, in fact, seek public injunctive relief, irrespective of the fact that they also sought damages on behalf of a class, because the plaintiffs sought to "enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public." *Blair*, 928 F.3d at 831, n.3.  The Court noted that "public injunctive relief available under the UCL and CLRA, among other statutes, is by definition primarily for the benefit of the general public" because the relief afforded under such statutes "benefit[s] the public directly by the elimination of deceptive practices but do[es] not otherwise benefit the plaintiff, who has already been injured, allegedly, by such practices and is aware of them." *Id.* at 8 (internal quotation and citations omitted). Additionally, and relevant here, the district court's ruling denying Rent-A-Ctr a discretionary stay on the non-arbitrable claims pending appeal (as the Court should do here) was undisturbed by the Ninth Circuit. *Id.* at 832; *Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *6 (N.D. Cal. Oct. 25, 2017).[3]

Defendant first argues that this Court failed to address the so-call "carveout" provision that allows the parties individual, provisional remedies such as injunctive

---

[3] Unpublished opinions reaching similar conclusions were issued by the Ninth Circuit the same day in *McArdle v. AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019) ("*McArdle*") and *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019) ("*Tillage*").  In those cases, the Court held that the contracts' non-severability clauses

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION
PENDING APPEAL

Case No.:  3:18-cv-2033-AJB-MDD

relief. *See* FAC, Ex. B at 4.   However, as this Court and *Wallace* correctly held, Wells Fargo's arbitration clause bars public injunctive relief in ***any*** forum by allowing Wells Fargo to submit ***any*** dispute to binding arbitration at any time, regardless of whether a lawsuit or other proceeding has previously begun, while at the same time barring the arbitrator from awarding public injunctive relief by stating that "**neither Wells Fargo nor you will be entitled to** join or consolidate disputes by or against others as a representative or member of a class, to **act in any arbitration in the interests of the general public."** FAC, Ex. B, at 3 (emphasis added). Moreover, the arbitration clause further provides, "Wells Fargo and you each agrees to waive the right to a jury trial or a trial in front of a judge in a public court." *Id.*   Thus, Wells Fargo has discretion under the agreement to send *any dispute* to arbitration, and the consumer is prohibited from "act[ing] in any arbitration in the interests of the general public," including by pursuing public injunctive relief.  The arbitration provision is unequivocally unenforceable under *McGill.* 2 Cal.5th at 961.  There is no ambiguity here: the arbitration provision does not allow consumers to seek public injunctive relief in any forum.[4]

Defendant next contends that the Court could have ordered the dispute to arbitration and then retained jurisdiction over Plaintiffs' request for the remedy of public

---

(i.e., "poison pills") invalidated the entire arbitration agreement upon a finding that the waiver of public injunctive relief was unenforceable.

[4] As discussed in Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration, Defendant's argument is grounded in the absurd notion that because Wells Fargo has discretion to decide which claims go to arbitration and which go to court, the agreement does not violate *McGill* because Wells Fargo will supposedly unilaterally choose to allow claims for "true" public injunctive relief to proceed in court. As the *Wallace Court* recognized, nowhere in Wells Fargo's agreement does it state that disputes concerning public injunctive relief can proceed in court.  The policy implications of Wells Fargo's argument are profound. Under Wells Fargo's tortured reading of the agreement, Wells Fargo would decide which claims concern "true" public injunctive relief—and may proceed in court—and which do not. But Wells Fargo may not decide when it wishes to follow and when it wishes to disregard *McGill*. The fact that Plaintiffs had to oppose Defendant's motion to compel arbitration proves Wells Fargo intends to compel all disputes—including those seeking public injunctive relief—to arbitration, where that remedy is prohibited.

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

Case No.:  3:18-cv-2033-AJB-MDD

injunctive relief.  This argument presents no meaningful issue on appeal because the arbitration agreement is entirely null and void by its own terms.  Indeed, this precise argument was explicitly rejected in *Blair*, where the Ninth Circuit found the defendant's reading of the severance clause as carving out only the potential public injunctive remedy and requiring arbitrator first to adjudicate liability was "unnatural and unpersuasive." 928 F.3d at 831; *see also Roberts v. AT&T Mobility LLC*, No. 15-CV-03418-EMC, 2018 WL 1317346, at *9 (N.D. Cal. Mar. 14, 2018) ("poison pill" language unambiguously precluded severance of liability determination in arbitration from remedy of public injunctive relief).  More to the point, unlike the arbitration agreement in *Blair*, Wells Fargo's arbitration agreement contains no severance clause and instead includes "poison pill" language, which, in the Court's words, "unambiguously states that the entire Arbitration Agreement will be unenforceable" if any provision is found illegal or unenforceable. Dkt. No. 37 at 9. *See McArdle v. AT&T Mobility LLC*, No. 09-CV-01117-CW, 2017 WL 4354998, at *5 (N.D. Cal. Oct. 2, 2017), aff'd, 772 F. App'x 575 (9th Cir. 2019).

Wells Fargo attempts to manufacture an ambiguity where none exists (as this Court explicitly recognized), arguing that the Court *may* have concluded that the "carveout" was in conflict with the provision stating that the only exception to arbitration is small claims court. Mot. at 10.  In support, Defendant cites *Ward v. Estate of Goossen*, No. 14-CV-03510-TEH, 2014 WL 7273911, at *3 (N.D. Cal. Dec. 22, 2014).  However, in that case, unlike here (as discussed below), the court found a substantial question existed (and thus granted stay following a sufficient showing on the other *Hilton* factors) where the contract containing the arbitration clause was "composed of two poorly-constructed documents, one of which was not even written or negotiated by the parties that it bound" and no other cases "address[ed] facts similar to the ones hand." *Id.*  No such ambiguity exists here. *See In re Tobacco Cases I*, 124 Cal. App. 4th 1095, 1106–07 (2004) ("Courts will not adopt a strained or absurd interpretation [in an arbitration clause] in order to create an ambiguity where none exists."). *See, e.g., Blair*,

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION
PENDING APPEAL

Case No.:  3:18-cv-2033-AJB-MDD

928 F.3d at 831-32 (severance clause did not permit arbitrator to determine liability for purposes of public injunctive remedy); *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 954 (N.D. Cal. 2019) (the court's application of well-settled contract principles to the arbitration provision's unambiguous, plain language warranted a finding that the motion to stay pending arbitration did not pose a substantial question).

Meanwhile, the "carveout" merely puts in writing what is already permitted under state and federal law with respect to the right of a party to seek temporary and preliminary equitable relief during the pendency of an arbitration proceeding when it is necessary to protect the status quo until an issuance of the ultimate award, which may otherwise be rendered ineffectual. Indeed, the language of the "carveout" mirrors identically the language of Cal. Code of Civ. Proc. ("CCP") § 1281.8, entitled "Provisional remedies; attachment, temporary protective or restraining order, writ of possession, preliminary injunction, or receiver" and which provides in relevant part:

> (a) As used in this section, "provisional remedy" includes the following: (1) Attachments and temporary protective orders issued pursuant to Title 6.5 (commencing with Section 481.010) of Part 2. (2) Writs of possession issued pursuant to Article 2 (commencing with Section 512.010) of Chapter 2 of Title 7 of Part 2. (3) *Preliminary injunctions and temporary restraining orders issued pursuant to Section 527.* (4) Receivers appointed pursuant to Section 564.

> (b) A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief. The application shall be accompanied by a complaint or by copies of the demand for arbitration and any response thereto. If accompanied by a complaint, the application shall also be accompanied by a statement stating whether

the party is or is not reserving the party's right to arbitration.

(emphasis added). The same preliminary and temporary relief is available under the FAA, as a court may "issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process." (*Toyo Tire Holdings v. Continental Tire North Amer.*, 609 F.3d 975, 981 (9th Cir.2010).)

These provisional remedies *by definition* do not include the public injunctive relief appreciated by *McGill* and which Plaintiffs here seek – *i.e.*, a permanent injunction on behalf of the public enjoining Defendant's wrongful conduct. *See, e.g., Ferguson v. Corinthian Colleges*, No. SACV 11-0127 DOC, 2012 WL 27622, at *1 (C.D. Cal. Jan. 5, 2012) (plaintiffs sought permanent injunction on behalf of public). Indeed, the preliminary injunctive relief authorized by CCP § 1281.8 for parties subject to arbitration agreements is designed to provide only *interim* relief by preserving the status quo pending the outcome of the arbitration. *Compton v. Super. Ct.*, 154 Cal. Rptr. 3d 413, 430–31 (Ct. App.), *review granted and opinion superseded on other grounds sub nom. Compton v. S.C. (Am. Mgmt. Servs.)*, 301 P.3d 1176 (Cal. 2013). *See also Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal.App.4th 1040, 1054 (2009) (Only those remedies specifically mentioned are allowed under CCP § 1281.8).

Wells Fargo's provisional remedy clause's mention of injunctive relief is merely restating what is already permitted in all arbitration clauses under both the FAA and California law, which is the ability to pursue preliminary and temporary injunctive relief when necessary to protect the status quo during the pendency of an arbitration, not for the purpose of litigating the ultimate resolution of the claims. Meanwhile, it is illogical to read the "carveout" clause so broadly as Wells Fargo asserts, as it would be in direct conflict with the arbitration provision's unequivocal and express prohibition on seeking relief on behalf of the general public. Therefore, this provision does not permit public injunctive relief and creates no ambiguity with respect thereto.

## B. DEFENDANT'S APPEAL PRESENTS NO SUBSTANTIAL LEGAL QUESTION

While Wells Fargo appears to equate *Britton's* use of the term "substantial question" as meaning that this Court should always grant a request to stay so long as an appeal is non-frivolous, or to torture the Court's logic another way, that because the appeal is non-frivolous, it therefore presents a "substantial question," this was not the holding in *Britton*. Indeed, as it relates to the merits of the appeals underlying a motion to stay, *Britton* cited to two cases in coining the term "substantial question" which substantively required either an issue of first impression (*Pearce*), or a likelihood of succeeding on the merits (*CBS*). Additionally, it seems counterintuitive to suggest that the Ninth Circuit chose a qualification such as "substantial," if all it intended was that the appeal be non-frivolous, minimally colorable, or some other lesser modifier. *See Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1034 (N.D. Cal. 2015) ("[in] the Ninth Circuit, serious legal questions often concern constitutionality") (internal citation omitted).

Regardless, it cannot be asserted that a "substantial question" is present when there is clear legal precedent in the Ninth Circuit under *Blair* and in the California Supreme Court under *McGill*. Contrary to Wells Fargo's repackaged arguments, Plaintiffs have adequately sought public injunctive relief, no split in authority exists post-*Blair*, and the "poison pill" language of the arbitration agreement was properly applied by the Court pursuant to *McGill*.

### 1. Plaintiffs Properly Seek Public Injunctive Relief

Defendant attempts to reframe its twice rejected argument that Plaintiffs have not sufficiently sought public injunctive relief and therefore its arbitration agreement is outside the scope of *McGill*. This exact argument has been rejected by this Court and *Wallace*, as well as by the Ninth Circuit in *Blair* where the court stated unambiguously:

> "Rent-A-Center alternatively argues that the McGill rule does not apply because Blair's requested relief does not amount to a public injunction. Not so. Blair seeks to enjoin future violations of

California's consumer protection statutes, relief oriented to and for the benefit of the general public."

928 F.3d at 831, n.3.

Nevertheless, Wells Fargo persists that Plaintiffs only seek private injunctive relief.  This assertion is meritless on several grounds.  First, as argued in Plaintiffs' opposition to Defendant's motion to compel arbitration and acknowledged by the Court, Plaintiffs need not seek public injunctive relief for the arbitration provision to be held unenforceable. Dkt. No. 15 at 14.  It is Wells Fargo's burden, as the movant seeking to compel arbitration, to prove its contract is enforceable.  This holds true on appeal. Because the arbitration provision violates *McGill* and thus Civ. Code § 3513, arbitration may not be compelled regardless of the relief Plaintiffs seek.[5]  This Court and *Wallace* found this reasoning persuasive "because [] Wells Fargo's Arbitration Agreement indeed bars public injunctive relief." Dkt. No. 37 at 7. *See also* Dkt. No. 15-1 (*Wallace* Order) at 5 ("The Court need not decide this issue because whether or not it is true is irrelevant.").

Second, Plaintiffs *do* adequately seek relief on behalf of the general public. The FAC seeks a public injunction under the CLRA and UCL to enjoin Wells Fargo from continuing to misrepresent its practices in publicly available marketing and account documents.[6] The Ninth Circuit explicitly held that such allegations were sufficient.

---

[5] *See McGill*, 2 Cal.5th at 962 ("a provision in *any* – even a contract that has no arbitration provision – that purports to waive, in all fora, the statutory rights to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law.").

[6] See FAC ¶ 296: "Defendants continue to violate the CLRA and continue to injure the public by using false, deceptive, and misleading terms in its Consumer Account Agreements. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Wells Fargo from continuing to engage in these deceptive and illegal practices"; ¶ 303: "Wells Fargo committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., when it affirmatively and knowingly misrepresented that it only authorizes one OD Fee or NSF Fee per item but does otherwise. Wells Fargo's representations are likely to mislead the public with regard to when it imposes overdraft fees."; Prayer for Relief: "An order on behalf of the

-12-

1

*Blair*, 928 F.3d at 831, n.3. Indeed, the *Blair* district court's affirmed opinion stated:

> Here, Blair seeks public injunctive relief under four laws:
> (1) Section 17200, (2) the CLRA, (3) the Karnette Rental-
> Purchase Act, and (4) usury under Section 1(1) of Article XV
> of the California Constitution. The first two were considered
> in *McGill* and the California Supreme Court determined that
> they provided injunctive remedies that were by and large for
> the benefit of the public, and as such could not be waived by
> contract. So too here.

*Blair*, 2017 WL 4805577, at *3.  In other words, the critical component is whether the law under which a plaintiff seeks the remedy of public injunctive relief provides for that relief.  The UCL and CLRA plainly do. *See* Bus. and Prof. Code § 17203; Cal. Civ. Code § 1782.

In *Delisle v. Speedy Cash*, No. 3:18-CV-2042-GPC-RBB, 2019 WL 2423090, at *2 (S.D. Cal. June 10, 2019), which Plaintiffs previously lodged (Dkt. No. 31), Judge Curiel agreed that the plaintiff properly invoked public injunctive relief under UCL section 17204. There, Speedy Cash argued the plaintiffs could not invoke *McGill* to invalidate the arbitration provision because the injunction the plaintiffs sought was not actually public in nature. Judge Curiel found this argument "unwinning" because the relief plaintiffs sought "[fell] squarely within the ambit of public injunctive relief" as articulated by the California Supreme Court in *McGill*.[7]  Similarly, here, as Plaintiffs are admittedly aware of the wrongful conduct, the primary beneficiary of injunctive relief

---

general public enjoining Wells Fargo and FCTI from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this complaint and any other acts and practices proven at trial;" *see also* ¶¶ 6, 86, 100-104, 200, 225-232, 264, 275, 295, 306, 311-312.)

[7] *Id.* (finding public injunctive relief adequately alleged: "it is hard to see how Plaintiffs' requested injunction would benefit [plaintiffs] directly, since they have already been injured, allegedly, by [the Defendant's] practices and is aware of them" and if the injunction was granted, "then the public would not be exposed to the high (and allegedly, buried) APR rates offered by Speedy Cash, and would receive the benefit of corrective advertising.") (internal citations and quotation marks omitted).

would be the public, which necessarily includes Wells Fargo checking accountholders who have not yet been assessed the illegal charges.

Defendant futilely cites to three cases on this front: *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 857-58 (S.D. Cal. 2019); *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *3 (C.D. Cal. Sept. 18, 2018); and *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745 (Ct. App. 2019). These cases will have no impact on appeal and do nothing to manufacture any substantial legal question.

Both *Johnson* and *McGovern* were decided prior to *Blair* and thus should be accorded no authority on appeal here as both contravene and have been superseded by *Blair. See* 928 F.3d at 831, n.3. For instance, in *McGovern*, the court took an extreme view that any UCL/CLRA claimant implicitly lacks standing to seek public injunctive relief under Article III. 362 F. Supp. 3d 850, 858-59. No other decision has adopted this extreme and inherently flawed reasoning, which appears to stem from confusion over public injunctive relief as a cause of action (incorrect) rather than a remedy (correct). It would hold that a UCL/CLRA plaintiff could *never* seek public injunctive relief, even though such relief is expressly enumerated in Bus. and Prof. Code § 17203 and Cal. Civ. Code § 1782 and has been recognized by countless courts. Judge Bencivengo went on to rule that *McGill* was preempted by the FAA. *Id.* at 860. Following *Blair*'s affirmance of *McGill*, this opinion should be disregarded in its entirety.

Likewise, *Clifford* is a distinctly factually inapposite California appellate court case. Mot. at 12. There, the plaintiff asserted labor code violation claims against his employer in his individual capacity. 38 Cal. App. 5th at 748. The California court explained, "[t]he private nature of Clifford's UCL claim is immediately evident from the face of his complaint … [which] repeatedly refers to wage and violations directed at *Clifford only*." *Id.* at 753 (emphasis original). The court explained further that "Clifford's requests for injunctive relief under the UCL are similarly limited to him as an individual." *Id.*

//

Here, on the other hand, Wells Fargo's practices uniformly affect hundreds of thousands, if not millions of people within California, across the United States and abroad.[8]  Taken to its conclusion, Defendant's logic would always preclude a plaintiff from seeking public injunctive relief against a major bank charging illegal fees because the class would necessarily include existing checking accountholders. This is the same flawed reasoning rejected by *Blair* and *McGill*.  It fails to acknowledge existing accountholders and future accountholders who have not yet suffered illegal charges, and thus are not members of the defined Classes, and other members of the public who may rely on the terms of Wells Fargo's publicly available (and misrepresented) checking account agreements and other marketing materials in deciding whether to bank with Wells Fargo or elsewhere.

This is a very important point with respect to Wells Fargo's argument that Plaintiffs' claimed injunctive relief is private.  Wells Fargo's argument is founded on the fundamentally faulty premise that the putative Classes encompass *all* Wells Fargo California checking accountholders.  They do not.  According to the Class definitions set forth in the FAC, Wells Fargo Class members *only* include those who have *already* been wrongfully assessed NSF, OD or OON fees during the class period. FAC ¶ 245.  They do not include other Wells Fargo checking account customers who are nevertheless at risk of incurring these wrongful charges due to Wells Fargo's ongoing illegal conduct.  Because these people are outside the Class definitions, they are members of the public who would *undoubtedly* benefit from a change in Defendant's practices as well as

---

[8] "As of March 29, 2019, Wells Fargo has a market capitalization of $222.96 billion and is the fourth-largest bank in the United States. It employs 259,000 people ***and serves one in three U.S. households***. Wells Fargo reported full year 2018 net income of $22.4 billion earnings, compared with $22.2 billion in 2017."  Greg McFarlane, *How Wells Fargo Became One of the Biggest Banks in America*, Investopedia, May 6, 2019, https://www.investopedia.com/articles/markets/093014/how-wells-fargo-became-biggest-bank-america.asp.

accurate disclosures in its Consumer Account Agreement[9] so that they might avoid the illegal charges suffered by Plaintiffs and the Class members.  Accordingly, the would-be beneficiaries of Plaintiffs' UCL and CLRA claims for injunctive relief are not a narrow group of accountholders similarly situated to Plaintiffs, as Wells Fargo argues, but all current and future checking account holders who have not yet suffered from the illegal charges.  Thus, this argument presents no question on appeal.

## 2.  In the Wake of *Blair* There is No Split in Authority

Defendant argues there is a "split" in authority regarding the arbitrability of the "exact" claims alleged by Plaintiffs, Mot. at 12, based on the now obsolete, pre-*Blair* rulings in *McGovern* and *Johnson*.  However, whatever split in authority existed among the district courts prior to *Blair* regarding FAA preemption of *McGill*, the applicability of *McGill* to account agreement containing arbitration clauses like Defendant's, and the extent to which a plaintiff must request public injunctive relief, has been extinguished. *Blair*, 928 F.3d at 830-32.  For the reasons expressed above in Section IV.B.I., the Ninth Circuit will not be persuaded by *McGovern* or *Johnson*, as it was not in deciding *Blair*, *McArdle*, and *Tillage*, and neither should this Court.

## 3.  Application of the "Poison Pill" Pill Provision

Wells Fargo next attempts to create confusion where none exists by claiming a substantial question exists with respect to whether the Court correctly applied the arbitration provision's "poison pill" language. Mot. at 3. This Court's Order denying Defendant's motion to compel arbitration held that such language "unambiguously states that the entire Arbitration Agreement will be unenforceable." Dkt. No. 37 at 9. Nevertheless, Defendant contends a question exists as to "whether the portion of the arbitration clause the Court found unenforceable under *McGill* relates to a 'representative action,' such that it triggers the terms of the poison pill" because the

---

[9] This alludes to another important point.  Because the Consumer Account Agreements have already been disseminated to these members of the general public (non-Class members), Wells Fargo cannot credibly argue that it has not disseminated misleading materials to people outside of the Class.  It has.

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

Court "apparently conclude[ed] that a request for public injunctive relief constitutes a "representative action."" Mot. at 2, 13.  Based upon this faulty premise, Defendant goes on, "[but] *McGill* … arrived at the exact opposite conclusion holding that a request for public injunctive relief *does not* constitute a representative action." Mot. at 2.  This argument, albeit creative, deeply mischaracterizes the Court's Order, *McGill*, and Defendant's own arbitration agreement.

The "poison pill" provision states: "If any provision related to a class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, the entire Arbitration Agreement will be unenforceable." Dkt. No. 1-3 at 3.  Thus, the "poison pill" is triggered by a finding of illegality or unenforceability as to "***any provision [in the arbitration agreement] related to*** …"  That is precisely what the Court found.  The Court correctly held that the entire agreement, which terms encompass *each* aforementioned type if action,[10] violates *McGill* by prohibiting public injunctive relief in any forum.  Defendant's *non sequitur* here as to whether "the portion of the arbitration clause the Court found unenforceable under *McGill* relates to a 'representative action'", Mot. at 13, is nonsense designed to mislead this Court.  The poison pill is plainly and expressly triggered by the unenforceability and/or illegality of the arbitration agreement's ***own provisions***, which were invalidated because they precluded public injunctive relief in any forum.  *See McGill*, 2 Cal.5th at 962.  As the Northern District of California explained under similar circumstances, "[t]he language of the 'poison pill' sentence unambiguously provides that 'the entirety of this arbitration provision shall be null and void' if subsection 2.2(6), waiving claims and relief on behalf of other persons, is found to be unenforceable." *McArdle*, 2017 WL 4354998, at *5. As in *McArdle*, the waiver of

---

[10]  The arbitration clause provides: "Can either Wells Fargo or you participate in ***class or representative actions***?  No, neither Wells Fargo nor you will e entitled to ***join or consolidate*** disputes by or against others as a representative or member of a class, to act in any arbitration in the interests of the general public, or to act as a private attorney general." FAC, Ex. B at 3.

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

Case No.:  3:18-cv-2033-AJB-MDD

public injunctive relief here is unenforceable under *McGill*, "and this triggers the 'poison pill' rendering the entire arbitration provision null and void." *Id.* Thus, no question is presented here. [11]

## C. STAY IS NOT WARRANTED BECAUSE THE BALANCE OF HARDSHIPS DO NOT "TIP SHARPLY" IN WELLS FARGO'S FAVOR

In evaluating this factor, it is important to keep in mind that Wells Fargo must do much more than show it would potentially suffer harm. Because it is highly unlikely Defendant will prevail in its appeal, it must show that "the balance of hardships ***tips sharply*** in its favor." *Lopez*, 713 F.2d at 1435 (emphasis added). Wells Fargo must show that in balancing its claimed hardship with the harm to Plaintiffs, the putative class, and general public, a stay in *strongly* favored. Wells Fargo has not met this burden, nor can it.

### 1. Defendant's Potential Hardship Is Minimal and Does Not Justify A Stay

Wells Fargo's chief argument here is that denial of this Motion will result in greater monetary expense to it. Mot. at 14-15. But if this were the sort of "irreparable injury" required by the courts in deciding motions to stay pending appeals of arbitrability decisions, then defendants should always win motions to stay; indeed, such stays should be automatic. But many courts have denied a request for stay under similar circumstances and refused to consider the impending cost of litigation in determining irreparable harm. *See Bradberry*, 2007 WL 2221076 at *4 ("The cost of some pretrial litigation does not constitute an irreparable harm to Defendant."); *Morse*, 2013 WL 123610, at *3 (recognizing that "the money and time a party must expend [during the litigation] process, while burdensome, does not alone constitute irreparable injury")

---

[11] Defendant's argument also fails under its own weight because when a plaintiff brings an action under the CLRA and exercises his to right a public injunction, he is acting as a "private attorney general." *Broughton v. Cigna Healthplans of California*, 21 Cal.4th 1066, 1077 (1999). Thus, Plaintiffs' claims seeking public injunctive relief would trigger the "private attorney general action" language of the "poison pill."

(citations omitted); *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-cv-001189, 2011 WL 2293221, at *5 (N.D. Cal. June 8, 2011) (moving party would not be irreparably harmed because additional expenses of proceeding through discovery "do not constitute irreparable harm."); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 2922726, at *1-2 (N.D. Cal. June 13, 2014) ("the Court is not convinced that … the degree of hardship suffered would be substantial"); *Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013); *McArdle v. At&T Mobility LLC*, No. 09-cv-01117-CW, Docket No. 74, 2010 U.S. Dist. LEXIS 54621 (N.D. Cal. 2010); *Oestreicher v. Alienware Corp*., Case No. 07-cv-00512-MHP, Docket No. 95 (N.D. Cal. Oct. 30, 2007); *Dunham v. Entl. Chem. Corp*., 2007 U.S. Dist. LEXIS 3092 (N.D. Cal., Jan 4, 2007); *Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, No. 16-cv-00495, 2016 WL 9226389 (D. Or. Oct. 5, 2016).   Thus, this lone argument fails to demonstrate that the balance of hardships tips sharply in Defendant's favor.[12]

In addition, Wells Fargo's complaint that it would be burdened by having to defend against unnecessary discovery is simply wrong.  Whether the case is arbitrated or not, Defendant will have to participate in merits-based discovery.  Central to this case is whether Wells Fargo unlawfully charges its customers NSF, OD and OON fees,

---

[12] Wells Fargo cites *Alascom, Inc. v. ITT North Electric Co*., 727 F.2d 1419, 1422 (9th Cir. 1984) in support of its contention that a denial of a stay would constitute "irreparable harm."  This case, however, are easily distinguishable. First, the Alascom court had compelled arbitration, which is precisely what this Court declined to do. Moreover, that case addressed whether an order *staying arbitration* could be appealed, and did not consider a court's decision, in the first instance, to deny or grant a stay pending appeal. Id. at 1422. Finally, *Alascom* was decided before *Britton*, and as the Northern District has recognized, "[i]t might be reasonable to infer that the Ninth Circuit's holding leads to the conclusion that denying a stay pending appeal would necessarily cause irreparable harm, ***if it were not for the Ninth Circuit's holding six years later in Britton***, 916 F.2d at 1412, that whether to stay pending appeal is within the discretion of the district court." *Bradberry*, 2007 WL 2221076 at *3(emphasis added).

misrepresents to customers and prospective customers its charging practices and policies, and to what extent its financial data and accounting documents supports this. Wells Fargo would have to produce this information anyway in connection with Plaintiffs' UCL and CLRA claims seeking public injunctive relief. *See Blair*, 928 F.3d at 831; *Roberts*, 2018 WL 1317346, at \*9. Thus, there is no reason that production of basic merits discovery would prejudice Wells Fargo by substantially increasing litigation costs. *See McArdle*, 2010 U.S. Dist. LEXIS 54621 ("Because the Court cannot predict when the Court of Appeals will rule in the related cases pending before it, the Court will not indefinitely delay the progress of this case. It is unlikely to proceed as far as trial before the Ninth Circuit rules and the merits discovery at least would be done even if the case were ultimately arbitrated.")

In support of its claimed hardship – that denying the stay will be too expensive for it, Defendant relies on five cases, all of which are easily distinguishable:[13] *Eberle v. Smith,* No. 07-CV-0120 W WMC, 2008 WL 238450, at \*3 (S.D. Cal. Jan. 29, 2008) (individual action where the plaintiff faced no substantial harm because parties' relationship had ended and substantial legal question existed where court previously concluded that emails subsequent to prior written agreements represented a stand-alone agreement that "profoundly impacted the parties' dispute resolution rights" and "replaced many of the specifics and protections of prior, formalized contracts"); *Murphy v. DirecTV, Inc.*, No. 2:07-CV-06465-FMC, 2008 WL 8608808, at \*2-3 (C.D. Cal. July 1, 2008) (court found substantial question existed with respect to novel choice of law issue and was also persuaded that because defendant's continued litigation efforts in a related action involved discovery and certification issues that did not overlap there would be no duplication of efforts if stay granted); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. EDCV161953DMGKK, 2018 WL 6074573, at \*1 (C.D. Cal. Mar. 8,

---

[13] Plaintiffs also point out that Wells Fargo is a publicly traded company with current market cap of approximately $225,382,551,928 and a reported total revenue for 2018 of $83,149,000,000. *See* https://www.otcmarkets.com/stock/WFC/financials.

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

Case No.: 3:18-cv-2033-AJB-MDD

2018) (serious question existed over split in district authority and no intervening circuit authority was on point); *Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012 WL 92738, at *4 (N.D. Cal. Jan. 11, 2012) (defendant made sufficient showing of likelihood of success due to, *inter alia*, choice of law analysis; thus showing required under the remaining Hilton factors was less strenuous).  In *Steiner*, 2008 WL 1925197, at *1, the court found a substantial question existed where AT&T sought appeal involving a purportedly "enhanced" arbitration agreement following a previous case in which a former iteration of the agreement was declared unconscionable under the *Discover Bank Rule*. *Id.* at 1, 3.  The opinion, which granted AT&T's requested stay, was later sharply criticized in the Northern District.[14]

However, unlike these cases, all of which all pre-date *Blair* and all, with the exception of *Velasquez-Reyes*, pre-date *McGill*, no substantial question exists here. Additionally, because of the injunction remedy claims will persist in this Court irrespective of the Ninth Circuit's ruling, it cannot be argued that Wells Fargo would be irreparably injured in any way because only this Court can evaluate the merits of this case with regards to Plaintiffs' UCL and CLRA claims seeking the remedy of public injunctive relief. *See Blair*, 928 F.3d at 831 (declining to sever issue of liability to arbitrator from public injunction claims). *See also Broughton,* 21 Cal. 4th at 1080 (1999); *Cruz v. Pacificare Health Sys., Inc*., 30 Cal. 4th 303 316-16 (2003); *Groom v. Health Net,* 82 Cal. App. 4th 1189 (2000); *Coast Plaza Doctors Hospital v. Blue Cross of California*, 83 Cal. App. 4th 677, 691-92 (2000); *Gray v. Conseco, Inc*., 2000 WL 1480273 (E.D. Cal. Sept. 29, 2000); *Ramirez v. Cintas Corp*., No. 04-00281, 2005 WL

---

[14]  *See Mohamed*, 115 F.Supp.3d at1028, n.4 ("While Judge Armstrong was correct at the time her decision issued in April 2008, the Court's own research demonstrates that it is no longer accurate to say that most courts grant stays in these circumstances. In fact, *according to this Court's unofficial tally of decisions since Steiner, California district courts have denied stays pending appeal of an order denying a motion to compel arbitration twelve times, while California district courts have granted such motions eight times*.") (emphasis added).

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION
PENDING APPEAL

2894628, at *4 (N.D. Cal. Nov. 2, 2005).  Thus, even if the Ninth Circuit were to reverse the Court's ruling and order individual arbitration, this court would still retain jurisdiction over Plaintiffs' claims for injunctive relief under the UCL and CLRA.  The pre-trial issues relating to both discovery and pre-trial merits-based motion work involved in litigating Plaintiffs' claims are virtually identical between the monetary restitution and equitable injunctive relief claims, and therefore, there will not be a substantial increase in case costs.[15]

So, in light of the fact that Wells Fargo's alleged harm is limited to a claim of increased litigation costs, and the increased costs would be minimal because of the injunctive remedy claims, Wells Fargo cannot credibly establish that it will suffer any real hardship if the Court does not stay the action.

### 2. The Harm Plaintiffs and the Classes Would Suffer If A Stay Is Granted Is Greater Than The Harm Defendant Would Suffer

Wells Fargo argues that Plaintiffs and the Class will not suffer any harm because Plaintiffs "understand how they incurred the disputed fees and have no risk of unwittingly incurring future fees" and any harm to the Class would be "individually small [and] speculative to consider." Mot. at 16.  In reality, Plaintiffs the putative Class, and the general public would be significantly harmed if the stay is granted.  Wells Fargo has extracted millions of dollars from its customers  in the form of unlawfully collected NSF, OD and OON fees and continues to unlawfully extract these monies from existing and newly acquired customers while these fees fall disproportionately on racial and ethnic minorities, the elderly, and the young—indeed the most vulnerable segments of society.[16]  Being continually shackled with these illegal fees, and the delay in being able to recoup them is a significant harm to Plaintiffs, putative Class members.  Additionally,

---

[15] Additionally, here, Wells Fargo can seek protection under the terms of the arbitration clause, which provides "the party that does not agree to submit to arbitration after a lawful demand must pay all of the other party's costs and expenses for compelling arbitration." FAC, Ex B at 3.

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

Case No.:  3:18-cv-2033-AJB-MDD

members of public who may be enticed to bank with Wells Fargo, and accountholders of Wells Fargo who have yet to incur fees, are also at risk due to Wells Fargo's continuing misrepresentations.

Defendant's claim that Plaintiffs understand how they incurred the fees and so are not at risk for incurring them in the future is wrong because only Wells Fargo knows its true practices associated with illegal NSF, OD, and OON fees.  For instance, only Wells Fargo knows whether it will decline an already declined (and NSF fee-assessed) charge for payment and charge the consumer an additional NSF fee on the same item.  Further, current and future Wells Fargo checking account customers not yet assessed any illegal fees likely have no idea what Wells Fargo is doing and thus continue to be at risk.

Additionally, the longer Plaintiffs are prevented from conducting discovery, the greater the risk of lost evidence.  *See U.S. Fidelity & Guar. Co. v. Helm*, 84 F.2d 546, 547 (9th Cir. 1934) (Witnesses may disperse, evidence may be lost, and "memories of the witnesses produced [are] certain to fade in the accuracy of their recollection."); *Bradberry*, 2007 WL 2221076 at *4 ("This risk of lost evidence weights against granting a stay.  This risk and the delay in litigation constitute a substantial injury to Plaintiff, even though his claim is relatively small.")  Because Plaintiffs, the putative class, and the public, would suffer very real injuries if this case was stayed, and Wells Fargo's only claimed injury is that it might be forced to expend resources that, as a practical matter, it will have to expend any way, Wells Fargo has not met and cannot meet its heavy burden of demonstrating that "the balance of hardships tips sharply in its favor."  *Lopez*, 713 F.2d at 1435.

### D. THE PUBLIC INTEREST DOES NOT SUPPORT A DECISION TO STAY

This factor should be viewed through two lenses: conservation of potentially wasted judicial resources and the public's interest in enjoining illegal activity.  Ultimately, the public interest is best served by a speedy determination of the legality of

---

[16]http://www.pewtrusts.org/~/media/assets/2014/06/26/safe_checking_overdraft_survey_report.pdf

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION PENDING APPEAL

Case No.:  3:18-cv-2033-AJB-MDD

Wells Fargo's practices and, assuming Plaintiffs' allegations are borne out, a quick end to the violations Wells Fargo is committing.

## 1. Judicial Resources

In evaluating this factor, this Court should "address the likelihood of success of the appeal to determine the probability that judicial resources will be conserved." *Bradberry*, 2007 WL 2221076, *4-5 ("Because Defendant does not have a strong likelihood of success on appeal, a stay will not result in the conversation of judicial resources. Therefore, the public interest in judicial economy does not strongly favor granting the stay."). As set forth above, Wells Fargo has failed to establish a strong likelihood of success in its appeal. Furthermore, because even a successful appeal would not substantially alter the resources this Court will have to utilize in the litigation of the UCL and CLRA claims for public injunctive relief, which all parties acknowledge are not subject to the arbitration clause, there is no real argument that a stay would help conserve judicial resources.

## 2. Enjoining Fraudulent Activity

The public interest in preventing fraudulent business practices strongly favors a refusal to grant the requested stay. "If the allegations in Plaintiff's complaint have merit, any delay harms the public interest. Unlike Plaintiff, the putative class members may not be aware of the harm Defendant's actions are causing them. A delay of proceedings will allow any harm to the putative class members to continue, and therefore may materially affect the public interest in vindicating the rights of consumers." *Bradberry*, 2007 WL 2221076, at *5. Here, Wells Fargo continues to cheat its customers by charging improper NSF, OD and OON fees. Indeed, Wells Fargo generates *billions* of dollars each year from ATM and overdraft fees[17] and has a horrendous track record of

---

[17] "America's three biggest banks – JPMorgan Chase (JPM), Bank of America (BAC) and Wells Fargo (WFC) -- earned more than $6.4 billion last year from ATM and overdraft fees, according to an analysis by CNNMoney that was verified by S&P Global Market Intelligence." Heather Long, *Big Banks Rack Up $6.4 Billion in*

defrauding the public.[18] If it is permitted to continue this fraud undeterred during the pendency of its spurious appeal, which could take years, it will cost consumers millions, which will likely never be fully recouped by those defrauded. The public's interest in preventing this unlawful activity strongly supports a denial of the requested stay.

**E. ANY DOUBTS REGARDING THE PROPRIETY OF GRANTING A STAY SHOULD BE RESOLVED IN THE DENIAL OF THE MOTION WITHOUT PREJUDICE**

If the Court is concerned that Wells Fargo may be at risk of real injury during the pendency of its appeal via overly burdensome discovery or if a trial date approaches, the better practice under these circumstances, and what courts often do when faced with a motion to stay proceedings pending a denied petition to compel arbitration, is to deny that defendant's motion to stay without prejudice to re-filing if it is established that discovery becomes too burdensome or if the trial date approaches. *See, Bradberry*, 2007 WL 2221076; *Oestreicher v. Alienware Corp.*, Case No. 07-cv-00512-MHP, Docket No. 95 (N.D. Cal. Oct. 30, 2007).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion with prejudice, or, alternatively, without prejudice.

Dated: November 19, 2019           **CARLSON LYNCH, LLP**

                                    */s/ Todd. D. Carpenter*

                                    Todd D. Carpenter
                                    *tcarpenter@carlsonlynch.com*
                                    (Eddie) Jae K. Kim
                                    *ekim@carlsonlynch.com*
                                    Scott G. Braden
                                    *sbraden@carlsonlynch.com*
                                    1350 Columbia St., Ste. 603

---

*ATM and Overdraft Fees*, CNN Money, February 22, 2017. https://money.cnn.com/2017/02/22/investing/atm-overdraft-fees-rise/index.html

[18] Ethan Wolff-Mann, *Every Wells Fargo Consumer Scandal Since 2015: A Timeline*, Yahoo Finance, August 8, 2018. https://finance.yahoo.com/news/every-wells-fargo-consumer-scandal-since-2015-timeline-194946222.html.

1

San Diego, California 92101

2

**KALIEL PLLC**
Jeffrey D. Kaliel
*jkaliel@kalielpllc.com*
Sophia Gold
*sgold@kalielpllc.com*
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009

3

4

5

6

7

*Attorneys for Plaintiff Helen Lotsoff,*

8

*Ashleigh Hartman, and the Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT WELL FARGO BANK, N.A.'S MOTION TO STAY THIS ACTION
PENDING APPEAL
Case No.:  3:18-cv-2033-AJB-MDD