SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
EDWARD D. VOGEL, Cal. Bar No. 110081
evogel@sheppardmullin.com
ALEJANDRO E. MORENO, Cal. Bar No. 256802
amoreno@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:  619.338.6500
Facsimile:   619.234.3815

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN LOTSOFF and ASHLEIGH HARTMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; FCTI, INC.; and DOES 1-50, inclusive<br><br>Defendants. | Case No. 3:18-cv-2033-AJB-MDD<br><br><u>CLASS ACTION</u><br><br>**REPLY IN SUPPORT OF WELLS FARGO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:   March 26, 2020<br>Time:   2:00 p.m.<br><br>Hon. Anthony J. Battaglia<br>Courtroom 4A (4th Floor Schwartz)<br>Suite 4135 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE ..................................................................................................... 2

    A. Hartman's APPSN Allegations Fail To State a Claim for Relief. .......... 2

        1. Overdraft Fees are Determined at the Time of Payment to the Merchant ............................................................................... 2

        2. There Is No Ambiguity In Wells Fargo's APPSN Disclosures. ................................................................................. 4

        3. Hartman Fails to State an APPSN Claim for Violation of the UCL. ..................................................................................... 6

    B. Wells Fargo Discloses that a Consumer May Incur a Fee With Each Item Presented for Payment. ......................................................... 6

        1. Lotsoff Fails to State a Claim for Breach of Contract in Connection With the Multiple Fee Claim ................................... 6

        2. There is No Breach of the Covenant of Good Faith and Fair Dealing .............................................................................. 7

        3. Lotsoff's UCL Claim Fails ......................................................... 8

    C. Wells Fargo Was Entitled to Charge the OON Balance Inquiry Fees ......................................................................................................... 9

        1. The Bank Cannot be Charged With Knowledge of FCTI's Error ............................................................................................ 9

        2. Hartman's UCL Claim Regarding Balance Inquiry Fees Fails ........................................................................................... 10

    D. Hartman Does Not State a Claim For Conversion Under California Law. ...................................................................................... 10

III. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

Cases

*Bodnar v. Bank of Am., N.A.*
   No. 14:cv-03224, Doc. 30 (E.D. Pa. Oct. 15, 2014) .................................................5

*Boone v. MB Fin. Bank, N.A.* (N.D. Ill. 2019)
   375 F. Supp. 3d 987 ................................................................................................2

*Clark v. Hills Bank and Trust*
   No. LACV080753 (June 26, 2019) ........................................................................5

*Figueroa v. Capital One, N.A.*
   2019 U.S. Dist. LEXIS 174797 (S.D. Cal. Oct. 7, 2019).....................................10

*Kelly v. Community Bank, N.A.*
   No. 8:19-cv-00919-MAD-CFH (N.D.N.Y. Feb. 18, 2020) ...................................5

*Lambert v. Navy Fed. Credit Union*
   2019 U.S. Dist. LEXIS 138592 (E.D. Va. Aug. 14, 2019) ....................................6

*Lloyd v. Navy Fed. Credit Union*
   2018 U.S. Dist. LEXIS 62404 (S.D. Cal. Apr. 12, 2018) ................................5, 10

*Roberts v. Capital One, N.A.*
   719 F. App'x 33 (2d Cir. 2017)...............................................................................5

Statutes

California Penal Code
   § 476a(a) .................................................................................................................8
   § 476a......................................................................................................................8

California Civil Code
   § 1719 .....................................................................................................................8

Other Authorities

12 C.F.R. § 1005.17 ........................................................................................................1, 4

## I. INTRODUCTION

The Court should grant Wells Fargo's motion to dismiss in its entirety. Lotsoff has abandoned her claim under the CLRA. (Opp. at 2, n. 1.) Accordingly, the CLRA claim must be dismissed with prejudice. As shown herein, the Court should also dismiss Plaintiffs' breach of contract, UCL, and conversion claims.

Hartman's APPSN claims for breach of contract and under the UCL fail because the Agreement clearly discloses that OD Fees are assessed at the time the merchant is paid. This makes sense. An account can only be "overdrawn" when money leaves the account. Wells Fargo also discloses that transactions may be authorized into a positive balance, but may then overdraft if intervening expenditures have reduced the consumer's available balance at the time the merchant is paid. Hartman seeks to manufacture ambiguity by relying on inapplicable disclosures concerning the Bank's ability to *approve* (or *authorize*) transactions into a negative balance pursuant to Wells Fargo's separate "opt-in" debit card overdraft service governed by Regulation E (12 C.F.R. § 1005.17). The purportedly ambiguous disclosures in the Bank's description of its debit card overdraft service are inapplicable because APPSN transactions are admittedly authorized into a positive balance.

Lotsoff's Multiple Fee claims for breach of contract and violation of the UCL also fail. Here as well, Lotsoff attempts to manufacture ambiguity where none exists. Wells Fargo discloses that "[f]ees may be assessed with each *item* paid into *overdraft* or returned unpaid." An "item," in turn, is "an order, instruction, or authorization to … pay funds or money from an account." Lotsoff obtained goods from a merchant by authorizing an ACH transaction (similar to an e-check) as payment. The merchant submitted the ACH for payment, but the ACH was returned unpaid because Lotsoff had non-sufficient funds. Seven days later, still unpaid for the goods taken by Lotsoff, the merchant re-presented the ACH for payment. It was paid into overdraft. Lotsoff was assessed fees in accordance with the Agreement—once for the item returned unpaid and once for the item paid into overdraft.

1  Hartman's OON balance inquiry claims for breach of contract, violation of the
2  UCL and conversion also fail. Simply put, Wells Fargo discloses that it charges an
3  OON balance inquiry fee "per inquiry." Because Hartman admits that FCTI
4  transmitted two balance inquiry transactions to Wells Fargo, Hartman cannot show
5  that the Bank caused her harm. Nor can she plead conversion under California law.

## II. THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE

### A. Hartman's APPSN Allegations Fail To State a Claim for Relief

#### 1. Overdraft Fees are Determined at the Time of Payment to the Merchant

Hartman argues that Wells Fargo promises to determine overdrafts at authorization. (Opp. at 3-7.) Not so. The Agreement clearly discloses that Wells Fargo determines whether the account is overdrawn at the time the funds leave the account and the merchant is paid. As discussed below, Hartman's claim seeks to manufacture an ambiguity by conflating the disclosures concerning the authorization of a transaction with those that govern payment.

To analyze why Hartman's claims fail, it is helpful to first understand the anatomy of an APPSN transaction. During an APPSN transaction, the consumer will swipe her debit card at a time when her account has available funds in the amount of the authorization. Wells Fargo will approve the transaction because the consumer has funds available to spend. No funds leave the account at that time. The merchant is not paid until it submits the transaction for settlement. If the consumer does not maintain a balance in her account sufficient to pay the merchant at settlement, Wells Fargo will charge an OD Fee. An overdraft occurs because the transaction "settles" into a negative available balance. *See Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 993 (N.D. Ill. 2019) (dismissing claims because agreement disclosed that OD Fees arise when an APPSN transaction is paid). The status of the account at the time of authorization is not pertinent to whether an OD Fee is assessed.

The Agreement fully discloses how this works during APPSN transactions. The Bank authorizes charges based on the consumer's "available balance," and

1  specifies that this balance is the "most current record of the amount of money availa-
2  ble for [a consumer's] use or withdrawal." (FAC, Ex. B at 18.)[1]  The Bank discloses
3  that the available balance will be affected by outstanding charges and new charges:

> Your available balance will be reduced by "pending" withdrawals, such as debit card transactions we have authorized and must *pay* when they are sent to us for *payment*. These pending withdrawals may be sent to us for payment at a later date. In some circumstances, these transactions may be *paid* into overdraft if other posted transactions or fees have reduced your balance before the pending transactions are presented for payment.

(*Id.* (emphasis added).)  This language is clear on two key points:  (i) transactions authorized into a positive balance may settle into an overdraft due to intervening transactions; and (ii) overdrafts are determined when the merchant is *paid*.

Hartman ignores these clear disclosures by arguing that "customers' accounts will always have sufficient available funds available to cover [APPSN] transactions because Wells Fargo has already sequestered these funds for payment" and "there are always funds to 'cover' [APPSN] transactions." (*See* Opp. at 4.)  As discussed above, this is not how APPSN transactions work.  Whether a transaction incurs an overdraft fee depends on whether there are sufficient available funds at the time the merchant requests payment and the money leaves the account.  (*See* FAC, Ex. B at 18-20.)  Whether funds are available when a transaction is "authorized" (and no money has left the account) is unconnected to the overdraft inquiry.

Wells Fargo appropriately charged Hartman the two APPSN OD Fees alleged in the FAC because her available balance was insufficient to pay Uber when it presented her two charges for payment.  (*See* FAC ¶ 68.)  These OD Fees were incurred in compliance with the terms of the Agreement.

---

[1] Hartman argues that Wells Fargo's disclosures were improper because the Bank has elected to change its policy for processing APPSN transactions after the filing of the FAC. (Opp. at 3.)  However, Wells Fargo's current policy on APPSN transactions is unconnected to whether Wells Fargo's prior policy concerning such transactions was sufficiently disclosed (Hartman concedes charging fees on APPSN transactions is lawful so long as appropriately disclosed). (FAC ¶ 24.)  Hartman's refences to Wells Fargo's current APPSN policy is also improper because it relies on extrinsic evidence outside the FAC.

2.      There Is No Ambiguity In Wells Fargo's APPSN Disclosures

Hartman seeks to create ambiguity by relying on Wells Fargo's disclosures concerning the Bank's debit card overdraft service. (Opp. at 4.) The disclosures concerning the debit card overdraft service are inapplicable. Under Regulation E, the debit card overdraft service only comes into play when transactions are authorized into a *non-sufficient* available balance. 12 C.F.R. § 1005.17; (FAC, Ex. B at 20.)[2] Here, APPSN transactions come under Wells Fargo's standard overdraft coverage.

Hartman contends the terms "to cover" and "approve" are ambiguous. (*See* FAC ¶¶ 37, 57, 286; Opp. at 4-7.) These terms, however, are used in Wells Fargo's description of the debit card overdraft service, which allows the Bank to *authorize* debit card transactions into a negative available balance. (FAC, Ex. B at 20.) The terms "to cover" and "approve" are not used *at all* in Wells Fargo's description of the standard overdraft coverage, which applies to APPSN transactions that are admittedly *authorized* into a sufficient available balance. (*See id.*, Ex. B at 20-21.)

Hartman is conflating "approving" a transaction into overdraft versus "paying" a transaction into overdraft. Only the latter is relevant for fee purposes. Wells Fargo's description of the standard overdraft service confirms that the relevant time for purposes of determining whether there has been an overdraft is when the merchant is paid: the Bank "<u>pays</u> checks or automatic payments (such as ACH payment) into *overdraft* rather than returning them unpaid." (*See id.*, Ex. B at 18 (underline added, emphasis original).) The Agreement further discloses the common sense principle that a consumer may authorize a transaction when she has sufficient funds available, but that she may incur an overdraft fee if that transaction is presented

---

[2] Although the disclosures concerning the Bank's debit card overdraft service are not applicable because such disclosures concern the *authorization* of transactions into a negative balance, the Bank was entitled to charge fees on Hartman's APPSN transactions because Hartman opted into the debit card overdraft service. 12 C.F.R. § 1005.17(b) (official interpretation (1)(iv)).

for payment when there are non-sufficient funds available to pay the merchant at the time it requests payment.  (*See id.*, Ex. B at 18-19.)[3]

Hartman's authorities upholding APPSN claims are distinguishable.[4]  For example, the disclosures at-issue in *Lloyd* related to the *opt-in overdraft services* which allowed the defendant to approve transactions into a negative available balance.  *See Lloyd v. Navy Fed. Credit Union*, 2018 U.S. Dist. LEXIS 62404, at *4 (S.D. Cal. Apr. 12, 2018) (stating that the claim arises from the disclosures in Navy Federal's "Optional Overdraft Protection Service.").  In addition, the specific disclosure language considered in *Lloyd* is materially different from the disclosure language criticized by Hartman here.  In *Lloyd¸* the court found that the term "authorize and pay" was ambiguous because it linked payment to authorization.  *Id.* at *23-24.  In contrast here, Wells Fargo's use of the word "approve" in the Agreement is equivalent to the term "authorized."  (FAC, Ex. B at 19.)  And, the Agreement distinguishes between "authorization" and "approval," on the one hand, and payment, on the other.  Indeed, the fact that "approval" of a transaction and its payment are distinct events is bolstered by Wells Fargo's disclosure that "Debit card transactions presented to us for payment (whether previously approved by us or not)

---

[3] Hartman argues that this disclosure concerning APPSN transactions is irrelevant because it purportedly applies only if a consumer removes standard overdraft coverage. (*See* Opp. at 8-9.) This disclosure merely confirms the general rule that a consumer may still overdraw his or her account (and incur a fee) in connection with an APPSN transaction due to the delay between authorization and payment of a debit card transaction despite removing the standard overdraft coverage.

[4] Hartman's other authorities are out-of-state, based on inapplicable law, procedurally distinct, and are otherwise inapposite. *See Kelly v. Community Bank, N.A.*, No. 8:19-cv-00919-MAD-CFH at *12 (N.D.N.Y. Feb. 18, 2020) (order on motion for leave to amend discussing the viability of an APPSN claim based on "authorize and pay" language similar to the inapplicable language at issue in *Lloyd*); *Roberts v. Capital One, N.A.*, 719 F. App'x 33, 35–36 (2d Cir. 2017) (discussing different disclosures where the term "overdraft" could be read to encompass an authorization into a negative balance); *Bodnar v. Bank of Am., N.A.*, No. 14:cv-03224, Doc. 30 (E.D. Pa. Oct. 15, 2014) (a single-page order denying a motion to dismiss without any analysis); *Clark v. Hills Bank and Trust*, No. LACV080753 (June 26, 2019) (decided under Iowa-state law which applies the lenient and inapplicable "fair notice" standard for review of a motion to dismiss); *Haskell v. UMB Bank, N.A.* (Jefferson County, Missouri) (no copy provided).

will be paid into *overdraft* and will not be returned unpaid…" (*Id.* (italics in original).) Wells Fargo's disclosures concerning APPSN transactions are clear.

### 3. Hartman Fails to State an APPSN Claim for Violation of the UCL

The Bank's practice of assessing OD Fees on APPSN transactions is lawful, adequately disclosed, and fair. (Open. Mem 19-20.) In response, Hartman argues that CFPB guidance purportedly expresses a "public policy" against charging fees on APPSN transactions. (Opp. at 23.) Hartman, however, concedes that the CFPB guidance allows such fees so long as adequately disclosed. (FAC ¶ 24.) OD Fees on APPSN transactions are not "deceptive" because Wells Fargo fully discloses that OD Fees are determined at the time the merchant is paid. Finally, Wells Fargo's practice is fair because it is neutral. Just as a consumer may incur an OD Fee if he or she continues to spend money while an authorized transaction is pending payment, the consumer may avoid such a fee if she maintains a sufficient balance so no overdraft occurs when the transaction is paid.

## B. Wells Fargo Discloses that a Consumer May Incur a Fee With Each Item Presented for Payment

### 1. Lotsoff Fails to State a Claim for Breach of Contract in Connection With the Multiple Fee Claim

Lotsoff argues that Wells Fargo's process for assessing either an OD Fee or NSF Fee on an "item" is ambiguous because the word "item" should be read to mean only the initial authorization by the consumer to allow the merchant to request payment. (Opp. at 12-13.) Lotsoff, however, ignores the fact that the request for payment comes from the merchant, not the account holder. Until an ACH transaction is presented for payment, there is no "payment" and the consumer continues to owe for the goods or services acquired. Thus, each presentment by the merchant plainly constitutes its own "item" because it constitutes "an order, instructions, or authorization to… pay funds or money from the account." (FAC, Ex. B at 1.)

Lotsoff argues that the provision that permits a merchant to present and re-present ACH debit entries for payment somehow establishes that the customer's

1  initial *authorization* of a purchase is a single "item." (*See* Opp. 12-13.) This
2  language, however, reinforces the fact that the request for payment (*i.e.* the "debit
3  entries") come from the merchant. *See Lambert v. Navy Fed. Credit Union*, 2019
4  U.S. Dist. LEXIS 138592, *9-10 (E.D. Va. Aug. 14, 2019) (finding plaintiff's
5  interpretation of the term "item" unreasonable because Navy Federal warned
6  members that an ACH authorization may be presented more than once and each
7  presentment constitutes an "item"). After a consumer authorizes the merchant to seek
8  payment, the actual "item" requiring the payment of "funds or money from the
9  account" comes from the merchant and, as the Agreement discloses, can be presented
10 and re-presented as a separate item until paid.

11   The NACHA rules cited in the Opposition also support this interpretation. The
12 NACHA rules focus on the "merchant's" request for payment (called an "entry") and
13 not the customer's initial authorization. (*See* Opp. at 16.) Lotsoff concedes that an
14 "entry" should be considered analogous to an "item." (*Id.*) Thus, common sense
15 dictates that each request for payment is its own item and will be processed for fee
16 purposes in accordance with Wells Fargo's disclosures.

17   In sum, if a merchant presents an item for payment and the consumer has
18 insufficient available funds, the Agreement provides that Wells Fargo may charge an
19 NSF Fee or OD Fee as appropriate under the circumstances.

20   2. <u>There is No Breach of the Covenant of Good Faith and Fair Dealing</u>

21   Lotsoff argues that Wells Fargo breached the implied covenant by treating each
22 "item" presented by the merchant as separate for purposes of assessing fees. (Opp. at
23 17.) Wells Fargo, however, fully discloses that "[f]ees may be assessed with each
24 *item* paid into *overdraft* or returned unpaid[.]" (FAC, Ex. B. at 19.) It is clear that
25 NSF transactions and OD transactions are each evaluated separately and each
26 constitute their own event for purposes of fee assessment.

27   The Agreement gives Wells Fargo the right to decide whether to pay a
28 transaction when the consumer has insufficient available funds. (*See* FAC Ex. B at

19.)  In Lotsoff's case, Wells Fargo rejected the merchant's request for payment on October 24, 2016 because Lotsoff had non-sufficient funds.  (*See* Open. Mem. at 4.)  When the merchant again requested payment (a new "item") seven days later, the merchant was paid and the transaction was approved into overdraft, resulting in an OD Fee consistent with the disclosures in the Agreement.  Lotsoff cannot state a claim for breach of the implied covenant in connection with her Multiple Fee Claim because Wells Fargo's conduct was expressly permitted under the Agreement.  (Open. Mem. at 11.)

### 3.  Lotsoff's UCL Claim Fails

Lotsoff has abandoned her claim under the "unlawful" prong of the UCL because she voluntarily dismissed her CLRA claim.  (*See* Opp. at 2, n. 1.)  For the reasons set forth above, Lotsoff also fails to state a claim under the "deceptive prong" because Wells Fargo fully discloses that each request for payment by the merchant is an "item" for purposes of fee assessment.

Wells Fargo has also demonstrated that its process for assessing OD Fees and NSF Fees under the circumstances alleged by Lotsoff is not "unfair."  This practice is in line with legislative goal of "discouraging banking customers from dishonoring their payment obligations to merchants."  (Open. Mem. at 18.)  Lotsoff fails to meaningfully respond to this argument.  First, Lotsoff is wrong to argue that section 476a of the Penal Code is limited to "check forgery."  (Opp. at 21, n. 8.)  Rather, section 476a applies in any situation where a person knowingly writes a check on insufficient funds.  *See* Cal. Penal Code § 476a(a) (establishing that it is a crime to write a check "knowing at the time… [that the person] has not sufficient funds… for the payment of that check.").  Second, Lotsoff concedes that section 1719 of the Civil Code furthers the legislative policy of discouraging consumers from dishonoring their payment obligations to merchants. (Opp. at 21, n. 8.)  It is the merchant who is prejudiced when a request for payment is rejected—not the consumer who has already obtained goods or services without paying for them.

1    Lotsoff argues that the Bank's conduct somehow places consumers "at greater
2 risk of failing to meet their obligations." (Opp. at 20.) However, Lotsoff incurred
3 fees because she purchased good without having the ability to pay. Lotsoff has not
4 identified any public policy furthered by allowing consumers to avoid paying agreed-
5 upon fees in such circumstances.

6 **C.    Wells Fargo Was Entitled to Charge the OON Balance Inquiry Fees**

7    1.    <u>The Bank Cannot be Charged With Knowledge of FCTI's Error</u>

8    The Agreement plainly permits the Bank to charge an OON fee per "balance
9 inquiry." (*See* RJN Ex. 1 at 42; ECF No. 21-2 at 2.) In the Opposition, Hartman
10 concedes that a fee per inquiry is expressly allowed. (Opp. at 18.) Thus, Wells Fargo
11 was permitted to assess Hartman a fee per balance inquiry communicated by FCTI.

12    The OON balance inquiry claim fails because Wells Fargo did not proximately
13 cause Hartman's alleged damages. (Open. Mem. at 13.) Hartman concedes that
14 Wells Fargo charges OON balance inquiry fees based upon the electronic instructions
15 received by FCTI. (*See* FAC ¶ 166.) Hartman further admits that the two OON
16 balance inquiry transactions at issue here were communicated by FCTI to Wells
17 Fargo. (*Id.*) Then, Hartman argues that Wells Fargo "knew or should have known"
18 that FCTI had transmitted a "fake" balance inquiry. (Opp. at 18.) Hartman's
19 implausible allegations of "knowledge" cannot salvage her claims.

20    Hartman fails to allege a duty—contractual or otherwise—requiring Wells
21 Fargo to verify the information it receives from third-party ATM operators. The
22 Bank has no way of knowing what its customers do at an OON ATM. Indeed, the
23 only way Wells Fargo can process transactions at OON ATMs is by relying on the
24 information transmitted by the OON ATM operator. Hartman concedes that Wells
25 Fargo accepts these instructions "blindly." (*See* FAC ¶ 276). As a result, Wells
26 Fargo cannot be charged with knowledge of, let alone responsibility for, the activities
27 of OON ATM operators.

28    Hartman's claim here lies solely against FCTI and, thus, her breach of contract

claim fails.[5]

### 2. Hartman's UCL Claim Regarding Balance Inquiry Fees Fails

Hartman's OON balance inquiry allegations fail to state a claim under the UCL. Hartman argues that Wells Fargo's conduct was deceptive because it purportedly "misled consumers into believing they would only be charged balance inquiry fees on balance inquires they chose to undertake." (Opp. at 21.) As discussed above, however, Wells Fargo fully disclosed that it charges an OON fee per balance inquiry and the Bank necessarily relies on the information transmitted by the third-party ATM operators.

Hartman's UCL claim fails for the additional reason that Hartman has failed to plead causation. Hartman argues that "the specifics" of the transmission between Wells Fargo and FCTI are "irrelevant," but the error was FCTI's. (FAC ¶ 166.)

### D. Hartman Does Not State a Claim For Conversion Under California Law

Under California law, "[a] bank may not be sued for conversion of funds deposited with the bank." (*See* Open Mem. at 21.) In her Opposition, Hartman fails to address the binding California authority cited in the Opening Memorandum. (Opp. at 23-24.) Instead, Hartman relies on authorities that analyze the claim of conversion under the laws of other states. *See e.g. Lloyd*, 2018 U.S. Dist. LEXIS 62404, at *37-38 (applying Virginia law). California law applies here. (*See* FAC, Ex. B at 5.) Thus, because Hartman has failed to address or distinguish Wells Fargo's California authorities, the Court should dismiss Hartman's claim for conversion.

### III. CONCLUSION

The Court should grant the motion and dismiss the action with prejudice.

---

[5] Hartman relies on *Figueroa v. Capital One, N.A.*, 2019 U.S. Dist. LEXIS 174797, at *25 (S.D. Cal. Oct. 7, 2019), to argue that the "central purpose of a bank's contractual disclosures is to provide account holders with adequate notice of fees." This is precisely what Wells Fargo did here. Wells Fargo gave Hartman "adequate notice of [its OON balance inquiry] fees" because it discloses that a fee will be charged *per* OON balance inquiry. In any event, *Figueroa* is inapposite because it concerns different alleged disclosure violations not at issue here. *Id.* at *27.

1 | Dated: March 12, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      *s/Alejandro E. Moreno*
ALEJANDRO E. MORENO

Attorneys for Defendant
WELLS FARGO BANK, N.A
Email: amoreno@sheppardmullin.com